George G. Smith, a son of decedent and a beneficiary under his will, appeals from an order of the Ocean county orphans court on the accounting by the executor, Lakewood Trust Company.
In the petition of appeal (and the notice of appeal), it is set forth that the appeal is taken from an order or decree of the orphans court, made and entered on December 19th, 1928, allowing the executor's account and allowing commissions to the executor; and the objections specified are — that the account improperly includes items which belong in a trustee's account and should not be included in the executor's account; and that the commissions were allowed at an excessive and improper rate and upon excessive and improper amounts.
The record sent up on appeal shows that there was no order or decree allowing the account. It shows an anomalous paper, captioned "In the matter of the Judicial Settlement of the Account of the Lakewood Trust Company, as Executor under the last will and testament of George V. Smith, deceased," and entitled "Decision." At the foot it is dated *Page 609 
"Dec. 19, 1928," and is signed "Arthur Gorman Gallagher, Judge of the Orphans Court." The language of the five or six pages of this document comprises, in form and substance, a judicial opinion only — except for the three paragraphs hereinafter quoted, to wit:
"I therefore decree that there shall be allowed to the Lakewood Trust Company as executor of the estate of George V. Smith, deceased, the sum of $16,306.20 as its commissions as executor under the will."
 * * * * * * *
"Therefore, in view of the objection heretofore raised, and on which point the court is heartily in accord with the objectors, I decree an allowance of one hundred dollars to Halsted H. Wainwright, Esq., for services rendered as attorney to the executor. * * *"
"Further ordered that there be paid to the surrogate of the county of Ocean on account advt., recording, etc., the sum of $476.01 as fees for services rendered to date."
As respects these three paragraphs, it may perhaps be deemed an order or decree.
It contains no language, decretal or otherwise, with respect to the allowance of the account.
It seems clear from the language of the statute (Orphans Courtact §§ 128, 129, 130) that the authority of the orphans court to allow commissions to an executor is limited and conditioned upon the prior settlement and allowance of the executor's account; it is assuredly expressly so limited by paragraph 129 in cases (of which the one sub judice is one), where the receipts of the executor exceed $50,000.
The executor's account in the present instance shows on its face receipts of $326,124.03. The commissions which the orphans court has allowed — $16,306.20 — amounts to five per cent. of that sum. Obviously an allowance of commissions in the amount of $16,306.20 cannot be made, under the statute, unless and until there has been a judicial determination — by the usual decree allowing the account — that the accountant has in fact received, as executor, assets amounting at least to twenty times that sum. *Page 610 
Moreover, since the statute provides (section 128) that the allowance of commissions shall be made with respect to the actual pains, trouble and risk of the executor in settling the estate; and provides (section 129) maximum rates in every instance; and since it is well settled that under certain circumstances of improper administration by executors, no commissions will be allowed them — it is quite clear that no allowance of commissions can be made in any instance, without a prior decree allowing the account concerning the administration in respect of which commissions are asked.
For this reason, therefore, the order of the orphans court allowing the commissions must be set aside.
However, it may avoid further litigation and delay if some mention be made of the objections set up by the appellant.
First, as to the account itself, and the sums on which commissions can lawfully be allowed.
Testator's will bequeaths twelve money legacies of $1,000 each, four more of $5,000 each, and one of $2,000. It next bequeaths a specific legacy of testator's household goods and of fifteen specified bonds of Community Finance Service, Incorporated. It next bequeaths to the executor as trustee, fourteen specific bonds, to set up three trust funds for three grandchildren. The residue of the estate, real and personal, is given to the executor, as trustee, to set up two trust funds of $100,000 each — one for testator's wife for life and his two children in remainder, and the other for testator's two children for life and remainder to the grandchildren. To this latter trust fund is to be added whatever the residuary estate might comprise in excess of the $200,000. The Lakewood Trust Company is named as executor and trustee.
The two capacities of executor and trustee are of course entirely separate and distinct, and their accountings should likewise be entirely separate and distinct. Re Steelman'sEstate, 87 N.J. Eq. 270. The present account is filed by the Lakewood Trust Company as executor, and is specifically an *Page 611 executor's account. The executor, as such, has nothing to do with the decedent's real estate, unless recourse thereto were necessary to pay debts or legacies. Such was not the case in the present instance.
This account contains items of charge, aggregating $155,500, being proceeds of sale of real estate. These should be stricken out. They were reecived by the trustee, not the executor, and have no place in the executor's account; nor has the executor
any claim thereon for commissions. The same thing is true as to the items of rent and income from real estate. Equally is it true that all items relating to the real estate, on the discharge side of the account, should be stricken out — these payments were made by the trustee, not by the executor.
Eliminating the items of real estate proceeds and income, the account shows that the executor received personal property,corpus, appraised at $132,118.90, and income from personalty (striking out the income from real estate and from specific trust funds) of $8,217.37. Its commissions as executor therefore could in no event be allowed on an amount in excess of $140,332.27.
Now as to the rate. Five per cent. on the sum mentioned is $7,016.61. This would be the maximum sum which could be allowed if the administration of the estate had been attended with the utmost possible amount of work, time, trouble and risk. It is obvious that this administration was in nowise of that kind — on the contrary it was of the simplest kind, and moreover it has not yet been completed; the money legacies have not been paid, nor even the specific legacy of fifteen bonds. How the executor could have the temerity to ask, and the court below the improvidence to grant, commissions at the maximum rate, is difficult of comprehension.
No reason appears why the administration is not completed — why the executor has not paid the money legacies, and the specific legacies mentioned to the outside legatee and to itself as trustee. The allowance of any commission ought to *Page 612 
be postponed until it has done this and filed a final and complete account.
When that is done the commissions to be awarded are to be fixed, under the provisions of the statute, "with respect to the actual pains, trouble and risk of the executor in settling the estate."
The account sets up that the executor has "liquidated" personal property to the extent of some $22,000 — but it appears that some $12,000 of this was cash in bank, about $1,000 was the appraised value of household effects turned over to the specific legatee, and practically all the rest was coupons collected and dividends received on corporate stock. It has only to sell personal property sufficient to realize enough to pay the $32,000 of money legacies. It has paid debts and funeral expenses of some $7,000. As to the great majority of the estate, it is required only to turn it over to itself as trustee. Few estates could be susceptible of easier administration. The collection of income was equally simple.
Having regard for the fact that the legislature has fixed five per cent. as the maximum rate for the most difficult administrations, it would seem that in this instance the rate should not exceed one and one-half per cent. It cannot be doubted that if this executor had been offered the work involved in the administration of this executorship, by a living client, at a compensation of $2,000, it would gladly have accepted the undertaking.
One thing further may be mentioned — it is intimated that if the residue turn out to be less than $200,000, it is intended to set up the trust fund for the wife of the full $100,000, and the trust fund for the children at only whatever remains. It does not appear from the will that such a course was provided or contemplated by the testator. The two funds seem to stand on an equal footing, in which event they would abate, if at all, prorata. *Page 613