Only one issue is submitted by the arguments in this proceeding — whether the failure of the defendants Underhill and Porter, as administrators of the estate of Beekman Underhill, deceased, to pay the transfer inheritance tax due to the state from this decedent's estate is a breach of the administrators' bond given by them to the ordinary.
The bond is in usual form, conditioned (1) for the making and filing of inventory of the estate; (2) for the administration *Page 527 
of the estate "well and truly, according to law;" (3) for a true accounting of such administration; and (4) for the payment of the residue of the estate to the persons entitled thereto.
That it is the duty of administrators to pay the transfer inheritance tax to which the estate is subject, is clear from the express provisions of the taxing statute — and is not disputed by defendants. See paragraph next succeeding paragraph "Fifth" of section 1, and also section 5 of the statute. P.L. 1909ch. 228, as amended down to and including P.L. 1922.
That a tax of $1,381.41 was due from this estate and was duly assessed and levied, appears by the proofs, and is not disputed by defendants. It further appears, and is not disputed, that this tax was due and payable as of the date of decedent's death, September 14th, 1922; that interest has accrued and is still accruing thereon at the rate of ten per cent. per annum since September 14th, 1923; that the administrators were appointed and qualified as administrators November 17th, 1922; that they have never paid the tax or any portion thereof; that they have never made any accounting; that (as appears by their own sworn report to the tax authorities) there was ample personalty in the estate for the payment of all debts and administrative expenses including the tax; that the defendant administrators were the sole next of kin of decedent and entitled to the whole residuary estate.
It is the contention of the tax commissioner that the administrators breached the condition of the bond "well and truly to administer the estate according to law" by their failure to pay the tax, and have also breached the bond by their failure to account.
As to this second alleged breach, it is held in Ordinary v.Cooley, infra, that such a breach is not available to a creditor of decedent. Neither can it be available to one who though not a creditor of decedent claims to stand in a position similar to that of such a creditor.
The defendant United States Fidelity and Guaranty Company, surety on the bond, contends that the failure to pay *Page 528 
the tax is not a breach of the obligation well and truly to administer; that the form of that bond is of ancient origin and of meaning fixed at the time of its origin and not to be interpreted as having any broader meaning at the present time than at the time of its origin; that the meaning of the word "administer" in the condition in question is limited to "the payment of the debts of the decedent;" that the tax in question is not a debt of the decedent and was not a liability of decedent's estates at the time of the origin of the form of the bond and the legal requirement for the giving of bond by administrators — hence the failure to pay the tax cannot be a breach of that condition.
That there are distinctions between a tax and a debt is true. That the tax in question is not a debt of decedent is also true (notwithstanding the provisions of the paragraph following paragraph fifth of section 1 of the statute, making the tax recoverable in an action of debt against the administrators). But, as has already been shown, the payment of the transfer inheritance tax is a duty of the administrators and a liability of the decedent's estate.
In support of the argument that the obligation "well and truly to administer" means only to pay the debts of the decedent, the defendant surety relies chiefly, if not entirely, upon the language in the opinions in Ordinary v. Cooley, 30 N.J.L. 271,
and Ordinary v. Connolly, 75 N.J. Eq. 521;72 Atl. Rep. 363.
In the Cooley Case the court had before it no question involving the determination of the precise particulars of the obligations of an administrator under the duly "well and truly to administer according to law." The issue was simply as to whether or not a creditor could recover on an administrator's bond for breach of the condition to pay to the persons entitled thereto, the residue of the estate found remaining after accounting; and it was held that he could not. The opinion points out that the first two provisions in an administration bond are for the protection of creditors, and the last two for the protection of the distributees and not creditors. *Page 529 
The expressions in the opinion to the effect that the duty to administer is the duty to pay the debts, were not intended to determine, and cannot be understood as determining, any such question as that now sub judice, i.e., whether the benefit of the second provision of such a bond is available to the transfer tax authorities or is limited strictly to technical creditors of the decedent. In speaking of the duty to administer as the duty to pay the debts, the court was simply using a phrase by way of general description — distinguishing the payment of debts from the payment to distributees — not definitely determining that the payment of creditors of decedent was the sole and only duty of the administrator under the obligation to "administer." As a matter of fact reference is also made in the opinion to the duty to pay funeral expenses, and the duty to recover debts due the decedent.
So also in the Connolly Case, there is no determination nor expression of opinion that the liability on an administrator's bond is available only to strict creditors of the decedent.
The duty to administer assuredly is not limited solely to the payment of debts due creditors of the decedent. The obligation, as expressed in the bond is to "well and truly administer according to law" "the goods, chattels and credits" of the decedent. Obviously the due and proper administration of the credits of the decedent necessarily includes the honest collection of the amounts due on such credits — or at least honest efforts so to do; also the honest conversion into cash of so much at least of the goods and chattels as is necessary to pay the debts and administration expenses — or the use of the goods themselves, at honest values, for that purpose. It also includes in addition to the payment of debts incurred by the decedent, payment of the funeral expenses — which are not debts of the decedent, but are liabilities imposed by law upon the decedent's estate ahead of the decedent's debts (or most of them).
It is deemed that the obligation to administer includes the duty to pay or discharge out of the assets of the estate all liabilities imposed by law upon those assets; and the payment of this tax is as much one of those liabilities as is the payment of funeral expenses. *Page 530 
The obligation of the surety as expressed in the bond is not that the administrator "will pay the debts of the decedent;" and is not so to be construed. If it had been so intended it would have been so expressed in the statute and in the bond. The actual language is that the administrator "will well and truly administer according to law." That must be deemed to mean what it naturally would mean — the performance of whatever duties constitute a part of the obligations imposed by law upon the administrator (so far as concerns the collection of assets and the payment of liabilities).
The surety's undertaking is a guaranty not merely that the administrator will pay the debts incurred by decedent; nor merely that the administrator will perform those duties which an administrator was legally obligated to perform at the time of the enactment of the Orphans' Court act; but that he will perform at least such duties as he is legally obligated to perform at the time of his appointment and the giving of the bond. It may well be that the surety's obligation would not cover a duty imposed by law upon the administrator subsequent to the giving of the bond — but that question need not here be determined.
The argument on behalf of the surety — that because the taxing statute contains several provisions looking toward the enforcement of the tax and does not specifically provide that the state may sue the surety on the administrator's bond, a legislative intent is thereby indicated that the state should have no such right — is an obvious non-sequitur. The only method provided by the statute for the actual collection of the tax is by suit against the administrators (or executors). The statute, by making the decedent's estate liable for the tax and providing for collection by suit against the administrator, puts the state in the same situation as that of any creditor of decedent. Specific authorization to sue the surety on the bond is no more requisite to give the state that right than it is to give that right to the decedent's creditor.
It is also argued that the provision in the taxing act which provides that where the administrator does not pay the tax within a year from decedent's death the administrator *Page 531 
shall give bond to the state for the payment of the tax and interest, indicates a legislative recognition and intent that the ordinary administrator's bond does not extend to cover the administrator's liability for non-payment of the tax. Not so. That provision of the taxing act is inserted as a condition to be performed in consideration of the state's delaying immediate collection of the tax in cases where the circumstances show that the immediate collection would or might be inequitable. See the statute, last paragraph of section 3, section 5 and section 6. There is no means of enforcing the giving of such bond, other than the retention of the right to compel immediate payment if the bond be not given. Presumably such bond is intended to protect the state against loss by possible shrinkage of the estate during the time the payment of the tax is held in abeyance — such as has happened in numerous estates during the past few years. For such a loss the administrator would ordinarily not be liable and hence the state would not be protected by the ordinary administrator's bond.
The logical argument is precisely the opposite of the surety's contention. The legislature, in providing for the giving of this special bond, had in mind the protection of the state for the collection of the tax. If it had been the legislative idea that the ordinary administrator's bond was not available to the state, it would have provided for the giving of the special bond by the administrator at the time of the administrator's appointment. It made no such provision; ergo, it had no such belief or intent.
It is not perceived, however, that this court has any power in this proceeding to decree the payment of any sum by the surety. It is true that the taxing statute provides (section 20) that the ordinary "shall have jurisdiction to hear and determine all questions in relation to any tax levied under the provisions of this act." Without attempting any comprehensive definition or delimitation of the extent of the jurisdiction conferred by this provision; and even assuming (but not deciding) that this court thereby has jurisdiction to enter a decree against the administrators for the payment of *Page 532 
the tax — it seems clear that no jurisdiction is conferred to enter decree against the surety.
No liability by the surety arises simply from any provisions of the act; the source and basis of the surety's liability is the general administration bond executed by it. The jurisdiction to determine and adjudge against the obligors of that bond, liability arising out of the bond, inheres in a court of law. Suit on the bond is brought at law by or in the name of the ordinary; judgment is entered for the full amount of the bond; assessment of the actual damages or amount payable to the party on whose behalf the bond is prosecuted is made in this court.Cf. Ordinary v. Cooley, supra, and Ordinary v. Connolly,supra.
For the same reason no decree can be entered herein against the administrators for liability on the bond; neither can any personal decree be entered against them for payment of the tax, since personal jurisdiction has not been acquired over them in this proceeding — they have been served only by publication. Nor can personal decree be entered against the transferees of the real estate, even though they have been personally served and appeared herein; the statute provides for no personal liability on their part, but simply makes the tax a lien upon the real estate notwithstanding the transfer. (The words "grantees" and "vendees" in the paragraph following paragraph "Fifth" of section 1, refer to grantees and vendees direct from decedent).
The proceeding may be deemed, and entertained, as an application for leave to sue at law on the bond in the name of the ordinary. The proofs are assuredly adequate to show at least a prima facie liability by the obligors; and order granting such leave will be entered. *Page 533