Eliza A. Vanderbeek died testate, in this state, on October 6th, 1912. The present respondents are the executors under her will. Transfer inheritance tax was duly assessed in respect of the estate of the said decedent; and included in this assessment were items as follows:
$390.48 on devise to Andrew M. Vanderbeek, due immediately.
$282.29 on devise to Fleda Russell Swift, due immediately.
$220.43 on devise to First Baptist Church, due on death of a life tenant.
$109.55 on devise to Vanderbeek Shotwell, due on death of a life tenant.
$109.54 on devise to Stella Shotwell, due on death of a life tenant.
$109.54 on devise to Marion S. Wood, due on death of a life tenant.
The said life tenants having thereafter died, and none of the said taxes having ever been paid, the present proceeding was instituted by the state tax commissioner against the said executors, under section 21 of the said statute (P.L. 1909, c.228), to obtain order or decree against them for the payment by them, either personally or out of any property of the decedent, of the amounts due upon said taxes.
Affidavits in response were filed by respondents, setting forth facts relied upon as constituting adequate defense. That defense is substantially as follows:
That decedent's personal estate was insufficient for the payment of debts and the executors took proceedings in the orphans court for the sale of the real estate to pay debts; that bill was thereupon filed in chancery, (Shotwell v. Vanderbeek,Docket 37, p. 27), by some of the beneficiaries under decedent's will, alleging that many of the alleged debts of the estate were not valid claims, that the executors were colluding *Page 208 
with other defendants to obtain fraudulently a sale of the said real estate, praying that the further settlement of the estate and of the accounts of the executors be taken over by the court of chancery, and that the executors be restrained from proceeding to obtain the said order to sell lands; that interim restraint was imposed by the court of chancery; that subsequently in that chancery suit it was, with the agreement of all parties, ordered that the settlement of the estate and of the accounts of the said executors be removed from the orphans court and taken over by the court of chancery and the proceedings to sell lands for the payment of debts be permanently restrained; that the said executors thereupon filed their account in the court of chancery, to which account exceptions were filed; that thereafter by agreement of all parties, decree was entered allowing the account as amended, which showed a deficiency of $302.68 required for the payment of debts; that this sum of $302.68 was paid by certain of the beneficiaries (presumably to the creditors or to the executors for the creditors);
That in the meanwhile the same complainants in the suit aforesaid, had also filed bill in chancery (Shotwell v. Swift,Docket 36, p. 27) for partition of the decedent's real estate; that the executors were not made parties to that suit; that that suit resulted in decree for sale in partition, sale and confirmation, the property being sold to Belle V. Shotwell and Vanderbeek Shotwell for $41,600, and in a subsequent order of distribution of said proceeds of sale, to wit, $13,672.97 to the said complainants in partition and the like sum to Fleda R. Swift, and the same to Andrew M. Vanderbeek;
That at the time (June 18th, 1917) of the entry of decree allowing the account, in the first mentioned chancery suit, the executors had no knowledge of the assessment of any transfer inheritance tax against the estate of the decedent; that if they had had such knowledge they would have informed the beneficiaries who supplied the deficiency required to pay debts, and the said beneficiaries would have provided the moneys to pay said tax.
It is not perceived that there is anything, in these facts thus presented, which constitutes a valid defense to the order *Page 209 
or decree sought by the tax commissioner. The determination in this case is indicated and controlled by the determination in the case of the similar proceeding in this court in Bugbee v. VanCleve, 100 N.J. Eq. 263, 134 Atl. Rep. 646. In that case decree was entered against the executor, personally for the amount of the tax unpaid, with interest and costs, notwithstanding that the provision of the statute in force at the time of death of the decedent in that case — P.L. 1894, c. CCX, p. 318, § 1 — was simply that the executors "shall be liable" for the payment of any and all such taxes until the same shall have been paid. In the present case the statute which applies is P.L. 1909, c. 228,p. 325, (as amended by P.L. 1912, c. 226), and the language of the second paragraph of item "Fourth," in section 1, is that the executors "shall be personally liable * * *." (The same is true under the present statute, — R.S. 1937, 54:35-2.)
It is true that in the Van Cleve Case, supra, the ordinary, in holding that the executor was personally liable, adds "provided of course that he had assets sufficient to pay and discharge the tax;" and it is upon that that the present respondents chiefly rely, — pointing out the fact that the real estate was specifically devised and did not (nor did the proceeds of sale) come to their hands, and that the personalty which came to their hands was insufficient to pay the debts of decedent.
That quoted statement, however, was dictum, — no such issue being actually decided or involved in that case; and while it is undoubtedly sound as to the essential principle which it reflects, it was not as carefully phrased as it undoubtedly would have been if the issue presented in the instant case had occurred to the mind of the court.
Unquestionably it was not the intent of the legislature that executors and administrators should be personally liable for the payment of the tax if they had no means or power of accomplishing the payment of such tax out of the assets of the decedent, — and the statute should be so construed. But the legislative language is direct, unambiguous and specifies no exception; and it is therefore impossible to conclude that it was intended that the executors or administrators should *Page 210 
be absolved from liability, simply because no assets of the decedent sufficient to pay the tax actually came to their hands, — inasmuch as section 8 of the statute gives them "full power to sell so much of the property of the decedent as will enable them to pay said tax." If there was real estate of the decedent which might have been sold by the executors and thereby sufficient funds obtained by them to have paid the tax, — and concededly such was the fact in the instant case, — they cannot escape the liability imposed by the statute, merely because they did not take such proceedings to sell and hence, by reason of their own default and neglect, they did not in fact have sufficient assets of the decedent come into their hands to enable them to pay the tax.
It is argued on behalf of respondents that they did endeavor to have the lands sold to obtain moneys sufficient to pay the debts and the tax, but were prevented from so doing by the restraint of the decree in chancery; but such is obviously not the fact. Concededly there was no mention of any such tax, in the proceedings to sell lands taken by the executors in the orphans court, and neither was there any such mention by the executors in their account or in any other wise in the proceedings in that chancery suit. And the restraint in the decree in that suit restrained them only from "further attempting to force the sale of the real estate * * * for the payment of debts * * * in theUnion County Orphans Court." (Italics supplied.) It did not restrain them in anywise from attempting, by proceedings in the Union county orphans court or anywhere else, to have that real estate sold to pay the transfer inheritance tax; and it cannot be doubted that if they had sought, in that administration in chancery, to have such a sale to pay the tax, the chancery court would have decreed such a sale unless some provision for the payment of the tax had been otherwise made.
Clearly it was by reason of their own neglect and default that they did not have sufficient assets of the estate in their hands to accomplish the payment of the tax; and they therefore show no excuse sufficient to absolve them from the statutory liability. It may further be added that *Page 211 
there does not appear to be any impediment in the way of their taking proceedings, even at the present time, to have the lands sold to obtain moneys for the payment of the tax.
Respondents further attempt to exonerate themselves from the liability, — to excuse their failure to take any proceedings either in the chancery suit or otherwise, for the sale of the lands to pay the tax, — by asserting that at and prior to the entry of the final decree completing their administration of the estate in the chancery suit, they had no knowledge of the assessment of any transfer inheritance tax. It appears from the record that notice of the assessment and amounts of the taxes in question was sent by the comptroller (now tax commissioner) to the executors, in February, 1914. The record also shows correspondence between the tax department and the attorney for the executors during 1912 and 1913, and that the said attorney in January, 1913, swore to an affidavit for the purposes of the assessment of the tax. The bill in the chancery suit was not filed until September, 1913, and the decree allowing the account and winding up the estate was not entered until June, 1917. It would therefore appear that the executors had actual personal knowledge of the assessment of these taxes, in ample time to take proper proceedings before the estate was wound up; that even if they did not have direct personal knowledge, they had ample knowledge or notice through the knowledge or notice of their attorney; and of course even if no notice had been sent to or received by them or their attorney, they are not thereby excused. They are conclusively presumed to have had knowledge of the provisions of the statute, — hence that the estate was, or at least might be, subject to tax, and that it was their duty and responsibility to see to it that the matter of such tax should be definitely determined and taken care of, (either by a determination that no tax was due, — or by a determination as to what tax was due and an accomplishment of the payment thereof).
It need scarely be stated, — (the executors make no claim to the contrary), — that the state is in nowise bound by the decree in the chancery suit allowing the final account of the *Page 212 
executors; the state was not a party to that suit. Moreover that decree does not purport to discharge the executors.
There seems to be some notion on the part of the executors that there should be some excuse to them because the real estate was sold in the partition suit and they were not parties to that suit. In the first place they are not frank, but disingenuous, in their affidavit in the present proceeding, — for while it is true that they were not parties to that partition suit, it appears by affidavits filed by each of the executors in the chancery suit for settlement of the estate, that each of them had knowledge at and prior to October 6th, 1913, that such partition suit had been commenced and that a sale of the real estate was prayed therein. It was open to them to apply to intervene in that suit; and while they were not necessary parties to the partition suit, they would doubtless have been permitted to intervene, under the circumstances, and to have had the amount of the tax paid out of the proceeds of sale. The bill in partition was filed in February, 1913; decree for sale made January 5th, 1915; sale made March 3d 1915, and confirmed April 21st, 1915, and distribution not ordered until June 8th, 1915. They had ample opportunity to take proceedings to obtain payment of the tax out of these proceeds of sale; and it was their statutory duty to take such proceeding or some other proceeding to obtain such payment by a sale of the lands, if they could not obtain payment from the devisees.
In the second place the sale in partition in nowise freed the lands from liability for the tax. It was still open to the executors, and was their duty, to take proceedings to sell the lands for payment of the tax, even after, and irrespective of, the sale and distribution in partition.
Obviously the actual and simple fact is that they overlooked and forgot all about this tax, during the whole course of all this litigation.
Finally, they now seek to escape their statutory liability by contending that inasmuch as the state's lien for the payment of the tax still exists on the real estate, and personal liability on the part of the beneficiaries still continues, they (the executors) should be absolved from liability and the *Page 213 
state required to take proceedings to collect the tax out of the beneficiaries or out of the real estate. The answer to that contention will also be found in Bugbee v. Van Cleve, supra.
The statute gives the state several different methods of collecting the tax, and puts liability on several different persons. It does not require that any one of these methods shall be followed by the state in preference to any other. Obviously it was the intent and purpose of the legislature to see to it that the tax be collected, and to leave it open to the tax department to determine and adopt whichever of the methods provided seemed to be the most advisable under the circumstances. "Where the executor is a man of substance, * * * and the state chooses to pursue him for the tax for which he is personally liable, he cannot escape responsibility or stall the proceedings by asserting that others are liable if the state chose to pursue them."
Petitioner is entitled to the order sought, against respondents, at least to the amount of the taxes which were due and payable at the death of the decedent. As the proofs presently stand there is no evidence or admission that the life tenants have died; and such evidence or admission is of course prerequisite to establish the allegation that the taxes on the transfers to the remaindermen have accrued due and payable. Otherwise the respondents are not yet liable for those taxes.
No objection on this ground was put forward in respondents' briefs, although they did not in their answering affidavit admit petitioner's allegation as to the death of the life tenants, — they said they had no knowledge. The tax commissioner's report to the register, which is the initial step in the present proceeding, is not verified and no proof by affidavit or otherwise, as to the death of the life tenants, was made at the hearing. Presumably the commissioner overlooked the fact that the report was not verified; presumably also the requisite proof can be readily supplied, since the report states the respective, exact dates of death of the life tenants. Unless respondents are willing to admit these allegations, petitioner may supply these proofs, on some motion day, on the usual notice to respondent. *Page 214