This suit calls for construction of the will and codicils of John D. Carscallen and for instruction to his surviving executrix and her co-trustee as to their duties and rights. The will and codicils were admitted to probate shortly after the testator's death, which occurred April 8th, 1906, and letters testamentary were issued to his children Charles S. Carscallen, Lulu E. Clarke and Arabella H. Lockwood. The testator left him surviving his widow Martha A. Carscallen and his four children Mary Kate, Charles S., Lulu E. and Arabella H., as his only next of kin and heirs-at-law. The widow died December 27th, 1926, leaving said four children surviving her. Testator's daughter Mary Kate is an incompetent and guardians have been appointed for her. She is alive at the age of eighty-five and has never married or had issue. Testator's daughter Arabella is alive and she has several children and grandchildren. Testator's children Charles and Lulu are dead.
Omitting from the will and codicils such provisions as are not relevant to the questions here presented, the will and codicils for the purposes of this suit provide as follows:
(1) All of testator's estate, after reserving a fund to provide income for the benefit of his daughter Mary Kate, is given for life to testator's wife Martha. Appoints as executors his three competent children and directs that during the lifetime of his wife each executor shall receive a compensation of $1,000 per annum and no other commissions or allowances.
(2) Provides that his daughter Mary Kate shall have for her support and maintenance at least $2,000 a year out of his estate. If one-fourth of the net income of the estate exceeds $2,000, she shall have such one-fourth. Directs his executors to deposit with a trust company such sum and securities as will provide such income for her life. If it should happen that the income of such trust fund exceeds in some years the amount necessary to be expended for support and maintenance of said daughter, his executors are directed to expend only such income as will, in their discretion, be necessary and sufficient for her support and maintenance and retain the balance *Page 198 
either to make up any deficiency of income in other years to provide such comfortable maintenance and support, or add it to the principal of the fund as circumstances may in their judgment require.
(3) Gives all his estate (except such as is given in trust for daughter Mary Kate) on the death of his wife, to his executors in trust to invest and pay the income therefrom to his son Charles and his daughters Arabella and Lulu in equal shares (or if either of them be dead to his or her issue in equal shares perstirpes) for and during the life of his daughter Mary Kate.
(4) Directs that on the death of Mary Kate his estate shall be divided by his executors and if Mary Kate shall leave children surviving her, his executors shall set apart one-fourth part of his estate and hold the same in trust for such children. Directs that the balance of his estate, or if Mary Kate leaves no child then the entire estate shall be divided among his children Charles, Arabella and Lulu in equal shares, or if they be dead to their issue, share and share alike per stirpes.
(5) Gives executors power of sale over his real estate and power to invest the proceeds, such power, however, to terminate after final division of his estate has been made on the death of Mary Kate.
 I.
The first question to be considered is as to what disposition should be made of the share of income of testator's estate accrued and to accrue since the death of testator's son Charles, which share of income would have been payable to Charles had he lived until the death of Mary Kate.
Under testator's will the income from his estate (except so much of the estate as was set aside for his daughter Mary Kate) is given after the death of his widow, to his son Charles and his daughters Arabella and Lulu in equal shares, or if either of them be dead, to his or her issue, for and during the life of Mary Kate. Charles had married and had a son to whom a daughter had been born, but when Charles died June *Page 199 
29th, 1939, his wife, his son and his granddaughter had predeceased him, and Charles died without issue surviving him. It was the testator's intention that the income from his estate should be paid in equal shares to his children Charles, Arabella and Lulu during their respective lives and until the death of Mary Kate and it was probably his expectation that they all would survive his invalid daughter Mary Kate; however, he further provided that in the event of the death of Charles, Arabella or Lulu leaving issue, during the life of Mary Kate, such issue should take the deceased parent's share of income, so that the right to receive such income never vested in Charles, Arabella or Lulu indefeasibly but was subject to the contingency of their death before Mary Kate. Charles' right to an equal share of income ended with his death and could not pass to his executor under the will he left. Although the testator made no provision for distribution of Charles' share of income on Charles' death without issue, the testator cannot be said to have died intestate as to such income; it became profit or accretion to the testator's estate and as such should be held as part of testator's estate, which estate he directed should be distributed on the death of Mary Kate. Bye v. Strasbourg, 102 N.J. Eq. 300; Schumacher v. Howard Savings Institution, 128 N.J. Eq. 56;affirmed, 131 N.J. Eq. 211.
 II.
The next question concerns the gift of corpus to testator's son Charles. Was it contingent on his surviving Mary Kate, or had it vested in him on the testator's death so that on his death without issue it will pass under his will and be distributable when the time for distribution of corpus arrives?
The settled rule of construction is that where a testator has given fractional interests in his estate in succession at periods which must arrive and it is apparent from the terms of his will that possession and enjoyment of the final gift are merely postponed to let in earlier interests, or for the convenience of the estate, all interests will vest together on the death of the testator. Post v. Herbert's Executors, 27 *Page 200 N.J. Eq. 540; Redmond v. Gummere, 94 N.J. Eq. 216; Howell,Ex'r, v. Green, Adm'r, 31 N.J. Law 570.
Here the testator gave his estate (except such as he directed should be held in trust for his daughter Mary Kate) to his executors after the death of his wife, in trust to pay the income therefrom to his children Charles, Arabella and Lulu for the life of Mary Kate and he directed that on her death his executors should make division of the corpus. The purpose of the testator was first to make provision for his wife and his incompetent daughter and he directed his executors, after the life estate given his wife had terminated, to hold the corpus of his estate intact until the death of Mary Kate and then to distribute thecorpus. The time for division of corpus was not postponed for anything personal to his children Charles, Arabella or Lulu, but was solely for the benefit of his wife and Mary Kate and for convenience in management of his estate. If the testator had merely provided that upon the death of Mary Kate the division ofcorpus should be made among his children Charles, Arabella and Lulu and had not added that in case of their death leaving issue such issue should take in substitution for the deceased parent, the interest of his children would have vested immediately on the testator's death under the authority of the cases above cited (In re Collins, 99 N.J. Eq. 333) but the proviso that in case of their death leaving issue, made their right to come into possession of their vested interest contingent upon their surviving Mary Kate. Thus the testator made the event of the death of a child leaving issue, the only factor which would curtail the absolute vesting in such child, but since he made no provision for the death of a child without leaving issue, the event did not occur in the case of Charles which would divest his vested interest, and Charles' share of corpus which had vested in him at testator's death will pass under his will and will be distributable when the time for distribution arrives. Beatty'sAdm'r v. Montgomery's Ex'x, 21 N.J. Eq. 324; Bonnell v.Bonnell, 47 N.J. Eq. 540; Cook v. McDowell, 52 N.J. Eq. 351;Miller v. Worrall, 59 N.J. Eq. 134; affirmed on this point,62 N.J. Eq. 776; Redmond v. Gummere, supra; Wells v.Bennett, 100 N.J. Eq. 358. *Page 201 
 III.
The next question presented relates to the share of income which testator's daughter Lulu was entitled to receive during her life and until the death of Mary Kate. It is whether such income arising after Lulu's death has vested indefeasibly in the issue of Lulu living at her death.
Lulu died February 10th, 1943, leaving her surviving as her only issue (1) a daughter, Helen C. Douglas; (2) a son, Jeremiah Clarke; (3) children of a son who had predeceased her, and (4) children of a daughter who had predeceased her. By the terms of testator's will Lulu's share of income passed to her issue in equal shares per stirpes for the life of testator's daughter Mary Kate.
This is not the time to attempt to decide the question presented. All issue of Lulu who survived her are still alive and Lulu's share of income is (presumably) being paid to them in accordance with the terms of testator's will. All of such issue are defendants in this suit and naturally none disputes the claim that their interest in income is indefeasibly vested in them for the life of Mary Kate; no party to the suit contends otherwise. However, a dispute may arise in the future in case any of Lulu's issue living at her death should predecease Mary Kate, and such event may produce a contest over the disposition to be made of the share of income the deceased issue had been receiving. In such case the testator's intention to be gathered from his whole will would be the determining factor. Security Trust Co. v.Lovett, 78 N.J. Eq. 445; Tantum v. Campbell, 83 N.J. Eq. 361;Sanford v. Kaercher, 126 N.J. Eq. 391; affirmed, 127 N.J. Eq. 277.
For instance, if Lulu's children Helen C. Douglas and Jeremiah Clarke or either of them should die before Mary Kate, the question may arise whether the share of income of the one dying will pass by her or his will, or whether under the terms of our testator's will, such share will be payable to such issue as the deceased parent may leave at her or his death. Jeremiah Clarke has a son born after Lulu's death and that son is an infant defendant in this suit represented by a guardian adlitem who, I think, should have contested instead *Page 202 
of consenting to the claim that said infant can have no interest in the income (or corpus) of the estate. Perhaps a decision in this suit which would exclude that son from a share of the income in question (as well as corpus) in the event of his father's death before Mary Kate, would be binding on that son but would not be binding on any other child who hereafter may be born to Jeremiah Clarke. Nor in case of death before Mary Kate of any of the children of Lulu's deceased children leaving issue, would such a decision be binding on the issue of any such deceased issue.
I say this is not the time to attempt to decide the question, also because the will directs that payment of income shall be made to Lulu, or on her death to her issue, until the time for distribution of corpus arrives, namely, the death of Mary Kate. It was clearly the testator's intention that until that time income should be continued to be received and disbursed by his executors so as to be certain that such income, present or future, would be applied first for the support of Mary Kate to at least the amount of $2,000 annually. Although it appears that the income from the estate is more than sufficient for the purpose, we have no right to speculate, as against the testator's direction, that it will be more than sufficient in the future for her proper maintenance and support.
 IV.
The next question arises because of the contention urged on behalf of the complainants that the share of corpus which Lulu would have been entitled to receive if she had not died, vested at her death indefeasibly in her issue who survived her, and since the income of that share has also vested in them, such part of corpus should be divided at once among such issue. They claim to be entitled presently to receive one-fourth part of testator's estate.
The testator's entire estate was given to his executors in trust with direction that on the death of Mary Kate they should divide it and in the meantime they should pay income therefrom until the death of Mary Kate. Thus the trusts are *Page 203 
active and continuing and the objects and purposes thereof have not been accomplished. The testator provided for alternative divisions of corpus, (a) in case Mary Kate leaves children surviving her and (b) in case she leaves no children. In the first case the division is to be made in four parts, one part to his executors in trust for the children of Mary Kate and the balance among his children Charles, Arabella and Lulu, while in the second case the division is to be made in three parts among Charles, Arabella and Lulu. In each case the direction of the will is that if Charles, Arabella or Lulu be dead the share of the deceased shall go to his or her issue share and share alikeper stirpes.
It seems clear that the testator fixed the death of Mary Kate as the earliest time his estate should be divided. This appears by the paragraph of the will I have numbered 4 and is iterated by the paragraph I have numbered 5, and it cannot be known until her death whether his estate should be divided in quarters or thirds. The testator's intention must prevail as against technical rules of construction, if not in contravention of law or public policy. It is immaterial what moved the testator to direct that his estate should not be divided until the death of Mary Kate and to dismember the trust as he created it would do violence to his intention. Zabriskie's Executors v. Wetmore, 26 N.J. Eq. 18.
The testimony shows that no separate part of corpus has ever been set aside for the benefit of Mary Kate and that one-fourth of the present annual net income of the estate not only exceeds $2,000 but is more than ample for her comfortable maintenance and support. However, it appears that the testator desired to be certain that the income of his entire estate in the first instance would be amply sufficient for her care and therefore he directed that division of his estate should be postponed until her death; in other words, that his estate should be held intact until that certain event occurred. Merely because present income greatly exceeds what is considered necessary and sufficient for her support and maintenance, the court should not assume or decide that she will not be prejudiced by a partial distribution of corpus at this time and therefore the testator's intention with respect to *Page 204 
distribution should not prevail and that she should be put to the hazard of a guess that future income on the remaining undistributed corpus will continue to accrue at the present rate.
The complainants seek to accelerate the time for division of one-fourth part of the corpus of which they claim Lulu's present issue are seized indefeasibly. They would leave the estate unsettled as to the share of corpus which will be distributable to Arabella or her issue at the death of Mary Kate; also as to the share given to Charles of which share they claim our testator died intestate but which I have decided was vested in Charles, and they would place a possible burden on those shares to help produce sufficient income for the support and maintenance of Mary Kate and to stand any loss on corpus which the estate might suffer hereafter; they would also leave it to a future time and condition, namely, the death of Mary Kate without children surviving her, to assert claim to an additional share ofcorpus.
What has been said heretofore on the question of deciding whether a share of income on the estate is vested indefeasibly in Lulu's present issue, applies as to corpus. The persons whom the will designates shall receive the corpus of the estate on the death of Mary Kate, are testator's children if alive, or the issue of such child as may have died before Mary Kate leaving issue, and with respect to such issue it is not unlikely that the testator may have meant all issue of a deceased child who might be in existence at the death of Mary Kate. In any event they should have their day in court. I conclude that this is not the time to determine whether the issue of Lulu who survived her death are indefeasibly seized of a share of testator's estate to the exclusion of other issue who may be born hereafter; nor is it the time to determine that a portion of the testator's estate should be divided. The time for such decision will not arrive until the death of Mary Kate, at which time all questions as tocorpus will be ready for a final and complete decision.
Where an executor or trustee seeks the court's instructions as to his duty under a will with regard to distribution of his estate, no instruction should be given if the time for distribution *Page 205 
has not arrived. Stewart v. Stewart, 61 N.J. Eq. 25; Kellogg
v. Burnett, 74 N.J. Eq. 304; Potter v. Watkins, 99 N.J. Eq. 538; Pennsylvania Company for Insurance, c., v. Robb, 118 N.J. Eq. 529; affirmed, 123 N.J. Eq. 232.
 V.
The final question I feel called upon to consider is whether the trustees under testator's will are entitled to commissions oncorpus for services as such after the death of testator's wife; also whether they are entitled to take commissions at the rate of five per cent. on gross income of the estate since that time, without court order for such allowance.
The will provides that during the life of testator's wife each executor shall receive a compensation of $1,000 per annum and no more. Testator's wife died in 1926. No account of testator's estate has ever been filed although letters testamentary were issued to his three children Charles, Arabella and Lulu nearly forty years ago, and it is not known when the duties of executors ended and those of trustees commenced. Charles and Lulu, surviving testator's wife, served until their respective deaths. Arabella is living and September 16th, 1943, Jeremiah Clarke was appointed by the Hudson County Orphans Court as substituted trustee to execute and complete with her the trusts under testator's will and codicils.
The reason for the provision of testator's will to which I have referred evidently was to provide as large an income as possible for his wife during her life and I do not understand that any allowance beyond the amount stated in the will is claimed for services during the wife's life. When the reason for the testamentary provision ceased, and in any event after the death of testator's wife, the fiduciaries were entitled to statutory compensation for their services. Heath v. Maddock, 83 N.J. Eq. 681; Tichenor v. Mechanics and Metals National Bank of NewYork, 96 N.J. Eq. 560; Parker v. Wright, 103 N.J. Eq. 535.
The trustees base their claim to commissions of five per cent. on gross income of the trust since the death of testator's *Page 206 
wife, without allowance by court order, on R.S. 3:11-2 as that statute was in effect as amended by P.L. 1939, ch. 134 (it has since been amended twice). Prior to the amendment of 1939, fiduciaries were entitled on an accounting to allowances on all sums that came to their hands at rates not to exceed a percentage fixed by statute. They were not entitled to any commissions until order of court passing an account fixed the amount. In re Smith,107 N.J. Eq. 607. As amended in 1939 (and since) the statute is authority for permitting fiduciaries to take five per cent. commissions on all income coming to their hands without waiting for such allowance by a court. In re Flynn, 132 N.J. Eq. 85.
An accounting of the estate should be made in the proper court without delay. On such accounting the amount of allowances to be made on corpus and income after the death of testator's wife, should be fixed according to the terms of the statute in effect prior to the amendment of 1939 and as to corpus under the statute as thereafter amended. Since the amendment of 1939, commissions accrued and to accrue on gross income of the estate may be taken by the fiduciaries without order of the court. *Page 207