The paramount issue implanted in the present appeal has not heretofore engaged the consideration of any of the courts in this state. The discord between the parties relates fundamentally *Page 446 
to the power and authority, if any, of the respondent, Director of Division of Taxation, to reopen and, in consequence of a change of opinion, to revise upward an assessment of transfer inheritance taxes previously levied upon the same assets and paid by the appellant in conformity with the preceding assessment.
It is necessary to trace the occurrences that instituted the original assessment and the circumstance that has evoked its revision. One Charles S. Carscallen, a resident of Hudson County, New Jersey, died testate on June 29th, 1939, and on September 20th, 1940, a transfer inheritance tax report of the assets of his estate was executed by the executrices of his will. The respondent, properly employing the report as a basis for his calculations, determined that the assets of the decedent's estate had a net value of $465,346.86, upon which taxes were computed in the amount of $23,267.34. The representatives of the estate had on June 29th, 1940, deposited with the respondent the sum of $22,440 to be applied to the tax liability, and on April 21st, 1942, the balance in the amount of $827.34 was paid with accrued interest. The usual receipt "in settlement of account" and a waiver and release in conventional forms were issued to the representatives of the estate.
In July, 1942, the representatives of the estate informed the respondent that they had erroneously included as assets in the report a greater number of shares of a certain stock than the decedent actually owned at his death. Upon the submission of proof, the assessment was opened and the estimated valuation of the net estate diminished to $462,727.32, the transfer of which incurred a tax liability of $23,136.36. The representatives of the estate thus obtained a tax refund of $155.24.
The interest of the decedent in the estate of his father, John D. Carscallen, who died testate on April 8th, 1906, was always recognized as an asset of Charles' estate. The legal nature and character of that interest was problematical. Whether it was a vested or contingent interest constituted the debatable point. Indeed, the representatives of the decedent's estate resolved to consult special counsel concerning *Page 447 
the subject, and on June 10th, 1940, elicited from him and exhibited to the tax bureau an opinion which occupies eighteen lengthy pages of the transcript of the proceedings here submitted. The learned counsellor rationalized that the residual gift to Charles by his father was wholly contingent upon the event of Charles surviving the death of Mary Kate Carscallen. Charles in fact predeceased Mary. The interest of the decedent was accordingly assessed as an intestate share in that portion of the residuary estate of John D. Carscallen, deceased, which was to have passed to Charles, but which was deemed to have lapsed upon the demise of Charles prior to the death of Mary.
What has happened? Recently the executrix and her co-trustee of the estate of John D. Carscallen instituted a cause in Chancery praying for a construction of his will. Lockwood v. Clarke,136 N.J. Eq. 195; 41 Atl. Rep. 2d 37. On February 1st, 1945, Vice-Chancellor Fielder rendered an opinion in which he determined (on p. 200): "Thus the testator made the event of the death of a child leaving issue, the only factor which would curtail the absolute vesting in such child, but since he made no provision for the death of a child without leaving issue, the event did not occur in the case of Charles which would divest his vested interest, and Charles' share of corpus which had vested in him at testator's death will pass under his will and will be distributable when the time for distribution arrives." That adjudication declarative of the vested nature of the interest of this decedent in the estate of his father is not here denied or sought to be discredited.
The inheritance tax authorities exemplifying their customary diligence and efficiency examined the opinion and on March 7th, 1945, notified the proctor for the estate of this decedent that a correction of the assessment of transfer taxes would be necessary in consequence of the judicial determination of the vested interest of the decedent in the residuary estate of his father. The reorganized assessment develops additional taxes in the sum of $13,045.06.
There is another circumstance that carries too much practical significance to be entirely ignored. It is the admitted *Page 448 
fact that the decedent's estate had been substantially administered two years before notice was received of the proposed revised assessment.
Before closing this narrative of the facts, it is relevant to state that there is no intimation whatever that the taxpayer or the taxing authorities indulged in any deception or bad faith in formulating the original assessment of 1942.
The legislature has expressly conferred upon the Ordinary the jurisdiction "to hear and determine all questions in relation to a tax levied" under the statute. R.S. 54:33-2; N.J.S.A.54:33-2. In determining the legal propriety of the new and supplementary assessment here sought to be made and the consequent imposition of additional taxes, the question is whether the former tax assessment is to be regarded as a finality in the factual circumstances here adduced.
In all these matters it is basic to remember that transfer inheritance taxation derives its substance from statutory enactments. The administration of our statute taxing the transfer of the assets of a decedent's estate is expounded in chapter228, Laws of 1909, by the provisions of which the performance of the administrative duties continued to devolve upon the Comptroller until 1931, when, by chapters 197, 201, 202, 303 and336, Laws of 1931, those functions were transferred to the State Tax Commissioner. In 1944, by chapter 112, § 1 (art. 4), p.304, the powers and duties theretofore assigned to the State Tax Department and to the State Tax Commissioner were bestowed upon the Director, Division of Taxation, in the State Department of Taxation and Finance. See, also, State Tax Uniform Procedure Act,R.S. 54:48-1 et seq.; N.J.S.A. 54:48-1 et seq.
Assuredly the respondent is a governmental agent, a creature of legislation by which his authority is invested and his obligations defined. So, also, may it be said that this court in the exercise of its appellate privileges is a designated statutory tribunal clothed in that capacity with no powers beyond those granted by statute. And yet, my attention has not been directed to any statutory enactment that expressly authorizes the respondent to make in such circumstances the reassessment here impugned. *Page 449 
It is argumentatively asserted that there is no statutory provision prohibiting such a reassessment. I cannot accept the incongruous notion that statutory agencies possess all instrumental powers except those expressly denied them by statute. Such a supposition defies our settled law.
True, there is in the statutory structure a section which enables the State Tax Commissioner (Director) upon his own motion to "appoint a competent person as appraiser as often as and whenever occasion may require." R.S. 54:34-6; N.J.S.A. 54:34-6.
That segment of the statute was undoubtedly designed to permit the taxing authority to reach and assess property of the decedent which was initially unknown, or inadvertently omitted or fraudulently concealed at the time of the appraisement, or property at that time of an unascertainable value and hence reserved for future appraisal. It does not encompass an endeavor to reappraise and reconsider at any future time a complete assessment comprehensively concluded and settled. Commonwealth
v. Freedley's Ex'r, 21 Pa. St. 33; In re Rice's Estate,61 N.Y. Supp. 911; affirmed, 68 N.Y. Supp. 1147; In re Crerar's Estate,56 App. Div. 479; 69 N.Y. Supp. 795. I remarked in Grell v.Kelly, 134 N.J. Eq. 593; 36 Atl. Rep. 2d 874 (on p.597): "Uniformity to-day in the construction and application of homogenetic statutes by the courts of neighboring states in like cases is undoubtedly opportune."
It is theorized on behalf of the respondent that the taxpayer having obtained from the Comptroller of the Treasury subsequent to the original assessment, a refund of taxes paid by the estate in error, the respondent has a reciprocal right within the same limited period to exact additional taxes because of the alleged previous misconception of the nature and value of a known asset of the decedent's estate. What is the source of that reciprocal right? Implication? Such a refund was expressly made attainable by statute. R.S. 54:35-10; N.J.S.A. 54:35-10; P.L. 1944 ch. 74;First-Mechanics, c., Bank v. Martin, 119 N.J. Eq. 280;181 Atl. Rep. 888. Promptly, I disclaim possession of any power to add to the statute an adjunctive and patently supplemental *Page 450 
practice and procedure solely on the ground of its analogy. A taxing statute is cautiously and strictly construed. Moreover, it is difficult to repel the inference that the legislature in considering refunds of erroneous tax payments also contemplated the wisdom of authorizing within a like period a revision upward of erroneous assessments. No action in the latter respect was taken. Vide, however, R.S. 54:38-2; N.J.S.A. 54:38-2. Any power of the tax administrator to increase assessments theretofore mutually regarded as final and to impose additional taxes should be circumscribed with reasonable limitations and accordingly, is a matter appropriately within the domain of the legislature.
It may, however, be advocated that the action of the respondent is enclosed impliedly within his general duty and authority to levy and collect all transfer inheritance taxes to which the state is entitled. If so, is the exercise of such an implied authority boundless as to time and illimitable by the factual conditions? To sustain the affirmative of such a proposition, the endeavor is made in this proceeding on behalf of the respondent to simulate the official acts of the Director to those of an auditor or accountant whose inaccuracies cannot prejudice or disadvantage the state, however eventual may be their discovery. I am disinclined to agree that in the determination of transfer inheritance taxation, the Director functions ministerially in the sense that he acts in obedience to the mandate of statutory prescriptions without regard to and without the exercise of his own judgment upon the propriety and justification of his official action. He is expected to recognize the essence and reality of the asset subject to transfer and resultant taxation. Is the asset, for example, jewelry, corporate stock, a bond and mortgage, a life estate in land, or a vested or contingent remainder therein? A determination of the intrinsicality of the asset must rationally precede an estimate of its value. His duties necessitate mental resolutions and conclusions.
I am not here concerned with an error of mathematical calculation, the certainty of which could always have been demonstrated, but rather with an obliquity of judgment. I am importuned to hold that a conclusion of the Director *Page 451 
resolutely contrived in the light of a full disclosure of the facts must continue to cower in the suspense of some eventual divergent or oppugnant opinion perchance to be rendered in some independent and collateral proceeding.
Opinions and conceptions normally differ in proportion to the complexity of the subject. They tend to converge according to the maturity and depth of cogitation applied. Retrospection often plays its part. And so, it has become observable that the dissenting opinions of one generation become the prevailing interpretations of the next. Meanwhile the engagements of life must be pursued with confidence rather than with uncertainty and suspense.
Assuredly in the field of social and public economics, there is a conspicuous virtue in the policy that gives finality to authoritative adjustments of tax as well as other financial liabilities. So, also, with the judgments and decrees of our courts. Strong v. Strong, 136 N.J. Eq. 361; 42 Atl. Rep.
2d 214. It was in keeping with that policy, that the late Vice-Ordinary Buchanan adopted a parallel view of a transfer inheritance tax, when he stated: "The assessment of the tax (if not appealed, or as finally determined after review) is a finality * * *." Nicholas v. Martin, 128 N.J. Eq. 344, 361;15 Atl. Rep. 2d 235. In Miller v. Edwards,85 N.J. Law 517; 89 Atl. Rep. 987, Mr. Justice Bergen stated: "Such an assessment is analogous to a judgment * * *."
A more specific reason for ascribing a decisive quality to the tax assessment lies in the circumstance that our statute imposes a personal liability upon executors and administrators for the payment of transfer inheritance taxes, and such personal liability is not extinguished by a final accounting and distribution of the decedent's estate. R.S. 54:35-2; N.J.S.A.54:35-2; Martin v. Bird, 126 N.J. Eq. 206; 8 Atl. Rep. 2d333; affirmed, 126 N.J. Law 415; 19 Atl. Rep. 2d 886;Bugbee v. Van Cleve, 99 N.J. Eq. 825; 134 Atl. Rep. 646;Thayer-Martin v. Underhill, 115 N.J. Eq. 526;171 Atl. Rep. 687.
I must be conscious in this case not only of the acknowledged absence of any applicable statute, but of the absence *Page 452 
as well of any fraud, concealment, accident, mistake of fact, or newly discovered evidence in the proper legal sense, which under general principles of law or equity might warrant a re-examination and correction of the conclusion which resulted in the original assessment.
The weight of authority now fortifies the conviction that a change in an authoritative rule of law resulting from a decision in an independent case announced subsequent to a decree previously entered, neither demonstrates an error of law apparent upon the face of that decree, nor constitutes new matter inpais, justifying a review of the decree. John Simmons Co. v.Grier Bros. Co., 258 U.S. 82; 66 L.Ed. 475; Miller v.McCutcheon, 117 N.J. Eq. 123, 129; 175 Atl. Rep. 155.
The only cause proposed for the present reassessment is that the tax commissioner in 1942 adopted an erroneous judgment concerning the legal essence of a reported asset of the decedent's estate. It is otherwise evident that the original assessment was made by the official to whom the requisite power had been delegated by the state and in the manner prescribed by the statute. The agent of the state with knowledge of all of the facts fulfilled his duty to the best of his ability, and the estate of the decedent discharged its obligation. Must the conclusiveness of that assessment be destroyed solely by the adventitious adjudication in the Lockwood Case? I think not.
Wherever in the field of transfer inheritance taxation there arises a problem heretofore unresolved by our own courts, it is prudent to explore the reported decisions of our neighboring states, particularly those of New York, whose statute was the model on which our legislation was patterned. In that pursuit, my attention has been ushered to the decisions of the courts of New York, Pennsylvania, and Massachusetts. Those decisions seem to sustain in the absence of qualifying statutory authority the conclusive character of the original assessment in circumstances similar to those existent in the present appeal and to nullify an attempted reassessment. Vide, In re Putnam's Estate, 220 App. Div. 34; 220 N.Y. Supp. 439; In re Crerar's Estate, supra; In reNiven, 61 *Page 453 N.Y. Supp. 956 (in which the exemption from taxation of a bequest of $200,000 to the late Senator Chauncey Depew for professional services rendered the deceased was sought to be reconsidered); In re Connelly's Estate, 77 N.Y. Supp. 1032; Inre Coykendall's Estate, 202 N.Y. Supp. 921; affirmed, 238 N.Y. 506; 144 N.E. Rep. 902; Commonwealth v. Freedley's Ex'r, supra;In re Moneypenny's Estate, 181 Pa. St. 309; 37 Atl. Rep. 589; Inre Ernst's Estate, 317 Pa. 367; 177 Atl. Rep. 19; In re Ramsay'sEstates, 342 Pa. 103; 20 Atl. Rep. 2d 213; In re Heberton'sEstate, 351 Pa. 564; 41 Atl. Rep. 2d 654; In re Rowell'sEstate, 315 Pa. 181; 173 Atl. Rep. 634; In re Haid's Estate,347 Pa. 159; 32 Atl. Rep. 2d 25; Cabot v. Commissioner,267 Mass. 338; 166 N.E. Rep. 852; 64 A.L.R. 1277; Ames v.Commissioner, 269 Mass. 352; 169 N.E. Rep. 139. The adjudicated cases constitute the source of the text in 61 C.J. 1719 and in28 Am. Jur. "Inheritance, c., Taxes," 135 § 276.
It is not without significance that the legislature of our sister state of Pennsylvania in 1939 in order to modify the "firmly intrenched principle" regarded it necessary to adopt an act which permits within one year from the date of the decedent's death the filing of a second appraisement to include assets omitted from the first appraisement due to mistakes of judgment of the appraiser. Act of June 24th, 1939; P.L. 721; 72 P.S., §§2302, 2384, 2431-a.
The stated reasons guide me to the conclusion that the assessment here under review is null and without authority in existing law. Having resolved that there is no additional tax indebtedness due from the decedent's estate, the other grounds of appeal need not be canvassed.
Decree accordingly. *Page 454