720 A.2d 655 (1998)
316 N.J. Super. 509
PLAYMATES TOYS, INC., Plaintiff-Appellant,
v.
DIRECTOR, DIVISION OF TAXATION, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted November 9, 1998.
Decided December 8, 1998.
*656 Michael A. Guariglia, Newark, for plaintiff-appellant (McCarter & English, attorneys; Frank A. Racaniello, on the brief).
Marlene G. Brown, Deputy Attorney General, for defendant-respondent (Peter Verniero, Attorney General of New Jersey, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Ms. Brown, on the brief).
Before Judges HAVEY, LESEMANN and PAUL G. LEVY.
The opinion of the court was delivered by PAUL G. LEVY, J.A.D.
Playmates Toys, Inc. overpaid its corporate tax liability for 1989 and 1990, but the statute of limitations had expired by the time it sought a refund. When the Division of Taxation discovered it had erroneously refunded $63,463 it ordered the return of the refunded sum. Playmates contested the Division's order in the Tax Court, but summary judgment was granted to the Division, and Playmates appeals. Although there is no specific statutory authority permitting the Division to reclaim mistaken payments to taxpayers, we affirm, based on its inherent authority to make the correction.
Playmates is a California corporation authorized to do business in New Jersey and is subject to the Corporation Business Tax (CBT), N.J.S.A. 54:10A-1 to -40. The Director of Taxation caused Playmates' CBT returns for 1989 through 1992 to be audited. On December 28, 1995, the Director issued a Notice of Assessment stating a liability of $22,964 for 1991 and $1,929 for 1992. With credits applied due to overpayments of $44,241 for 1989 and $44,115 for 1990, the 1991 and 1992 liabilities were offset and no balance was due to the State. That net balance was calculated on worksheets attached to the schedule of liabilities, and those worksheets expressly stated that the balance of overpayments for 1989 and 1990, amounting to $63,463, was not available for refund because those years were "out of statute for refund." The reference was to the statutory limit of N.J.S.A. 54:49-14, restricting claims for refunds to a period of two years from the payment of the tax. The CBT refund periods *657 for Playmates began on September 25, 1990 for the 1989 tax year, and on September 16, 1991 for tax year 1990.[1]
Following receipt of the Notice of Assessment, Playmates filed a protest with the Conference and Appeals Branch of the Division and separately sought a refund of $63,463 with CBT Refund Section of the Division. Both the protest and the refund claim were filed on March 18, 1996, but each was filed separately without any reference to the other. On March 27, 1996, the Refund Section caused two checks totaling $63,463 to be issued to Playmates.
Unaware that a refund had been processed, the Conference and Appeals Branch reviewed the protest. An employee called Playmates' accounting firm in order to obtain a power of attorney and to schedule a conference. When she advised Playmates' representative that the Division intended to uphold the assessment, the representative replied that the request for a conference would be withdrawn because Playmates had received a full refund. The Director, nonetheless, issued a final determination upholding the Notice of Assessment and directed Playmates to return the $63,463. Playmates responded by filing an action in the Tax Court contesting the Director's order.
After discovery, cross-motions for summary judgment were filed. The Director did not dispute that Playmates actually overpaid its CBT liability for the years at issue, but contended that the refund must be returned. Playmates did not dispute that the claim for refund was filed beyond the statute of limitations, but contended that the Director could not recover the refund once it was disbursed. The judge found that Playmates was not entitled to the refund because the statute of limitations had expired and payment of the refund did not amount to a waiver of the Director's ability to seek a return of the over-payment encompassed by the refund. Accordingly, summary judgment was granted to the Director and Playmates appeals.
Playmates contends that the Director lacks authority to recover the CBT refund because: (1) by issuing the refund, the Director waived his only use for the statute of limitations as a defense to paying the refund; (2) while the Gross Income Tax Act provides that an erroneous refund is considered an underpayment of tax which the Director can recover, there is no statutory authority for recovery of an erroneous CBT refund; and (3) the Director can not re-assess the tax from 1989 and 1990 because the limitations period for both years has expired. We find no merit to any of these contentions.
Waiver is defined as a voluntary and intentional relinquishment of a known existing legal right or such conduct as warrants an inference of the relinquishment of such a right. West Jersey Title & Guar. Co. v. Industrial Trust Co., 27 N.J. 144, 152, 141 A.2d 782 (1958). Where a government entity makes a mistake of law, a statute of limitation is not necessarily waived. Williams v. Deptford Bd. of Educ., 192 N.J.Super. 31, 42, 469 A.2d 58 (App.Div. 1983), aff'd, 98 N.J. 319, 486 A.2d 846 (1985). In Williams, the Board of Education sought to recover payments erroneously disbursed to plaintiff in a work-place injury case. The court stated that "[a]n erroneous payment due to a misinterpretation of the law inures to the detriment of the taxpayers.... Hence, on balance equity demands that the Board be permitted to recoup moneys paid under such circumstances and rectify its error." Ibid.
Moreover, Playmates, as a matter of law, did not rely on any waiver affected by the Director. Where the "only reliance on the conduct of the Director was in retaining [the erroneous refund]" appellants are unable to establish detrimental reliance. Marrinan v. Director, Div. of Taxation, 17 N.J.Tax 47, 58 (Tax 1997). Here, as in Marrinan, supra, the Director issued an order to return the erroneous refund within weeks of its disbursement. Ibid.
*658 Finally, Playmates argues, and the Director concedes, the Division has no express statutory power to recoup funds disbursed in error. The issue is whether the Director has an inherent authority to recoup mistaken disbursements. We hold that he does.
There can be no question that agencies have inherent powers, not specifically traceable to a particular statute. See, e.g., SMB Assoc's v. New Jersey Dept. of Env. Prot., 264 N.J.Super. 38, 624 A.2d 14 (App. Div.1993)(DEP has inherent power to waive de minimis violations); Hayes v. Gulli, 175 N.J.Super. 294, 418 A.2d 295 (Ch.1980)(discussing whether the power to subpoena was an inherent power of the Office of Administrative Law); Central Home Trust Co. v. Gough, 5 N.J.Super. 295, 68 A.2d 848 (App.Div.1949)(discussing the inherent powers of the Department of Banking and Insurance). Further, where an agency or other government body has the responsibility to take in or disburse moneys, the common law of New Jersey has typically held that the entity has the inherent power to correct its mistakes. See, e.g., Redding v. Burlington Cty. Welfare Bd., 65 N.J. 439, 323 A.2d 477 (1974)(holding that a welfare board could recover overpayments); Williams, supra, (equity "demands" that a school board can recoup teacher's benefits erroneously paid due to misinterpretation of law). This reasoning is equally applicable to the Director of the Division of Taxation.
Affirmed.
NOTES
[1] The four-year period of Taxpayers' Bill of Rights, amending N.J.S.A. 54:49-14, does not apply to claims that accrue before July 1, 1993. N.J.S.A. 54:48-7(c).