KUSKIN, J.T.C.
In a previous decision in this matter, Lenox, Inc. v. Director, Div. of Taxation, 19 N.J.Tax 437 (Tax 2001) (“Lenox I”), I held as follows: (1) plaintiffs failure to file timely refund claims for its fiscal years ending April 30, 1985 and 1986 precluded recovery of overpayments of corporation business tax (“CBT”) resulting from adjustments (“Audit Adjustments”) made by the New Jersey Division of Taxation (“Division”) after an audit of plaintiffs CBT returns; and (2) plaintiffs failure to file with the Division timely reports of changes made by the Internal Revenue Service (“IRS Changes”) in plaintiffs federal income tax liability for its fiscal years ending April 30, 1985, 1986 and 1987 precluded recovery of overpayments for those years resulting from the IRS Changes. With the consent of the parties, my Lenox I opinion did not consider claims made by the Director for the recovery of refunds paid to plaintiff for fiscal years ending April 30, 1985, 1986 and *467 1987 based on the Audit Adjustments and IRS Changes. Id. at 444. This Opinion addresses those claims and also considers plaintiffs application to compel payment, with interest, of a refund allocable to its fiscal year ending (“FYE”) April 30,1988.
For the reasons set forth below, I hold that: (i) the Director has inherent authority to recover the refunds erroneously paid to plaintiff; (ii) interest is payable on the refunds from the date plaintiff received notice that the Director claimed the refunds were paid erroneously; and (iii) the Director must pay the refund attributable to FYE April 30,1988 with interest.
I.
Factual Background
Most of the factual background of this matter is set forth in Lenox I, supra, 19 N.J. Tax at 441-44. The facts relevant to the issues now before me are the following. On July 8, 1992, the Division issued a refund check to plaintiff in the sum of $881,695. This amount consisted of $667,845 based on the IRS Changes reported to the Division with respect to fiscal years ending April 30, 1986 and 1987, and $214,210 based on the Audit Adjustments with respect to fiscal years ending April 30, 1985 and 1986. The full amount of the overpayment for fiscal years ending April 30, 1985 and 1986, as determined by the Division’s audit, was $302,896 ($229,813 allocable to FYE April 30, 1985 and the balance of $73,083 allocable to FYE April 30, 1986). The audit also disclosed a deficiency of $88,686 for FYE April 30, 1987. Accordingly, the Director credited a portion of the overpayment against the deficiency, leaving a net overpayment of $214,210.
Plaintiff also claimed a refund of $671,742 for FYE April 30, 1988 based on IRS Changes reported to the Division. On December 14, 1994, the Director issued his final determination denying the refund claim. Plaintiff filed an appeal to the Tax Court which was settled. The settlement was reflected in a Stipulation of Dismissal dated May 12, 1997 containing the following provisions:
*468 2. It is further stipulated and agreed that defendant [ (the Director) ] will approve plaintiffs 1988 Corporation Business Tax refund claim in the amount of $452,551, as set forth in defendant’s April 8,1997, revised final determination;
3. Defendant further stipulates and agrees that he will in no way reverse, amend or otherwise modify or rescind his determination as set forth in the April 8, 1997 revised final determination; ____
On June 13, 1997, the Tax Court entered judgment based on the Stipulation of Dismissal, but the Director has not paid the refund.
At the time of issuance to plaintiff of the $881,695 aggregate refund, the person in the Special Audit Branch of the Division in charge of processing plaintiffs refund claims was aware of concerns relating to the timeliness of the filing of plaintiffs reports of IRS Changes. After conferring with two hearing officers, she authorized the issuance of refunds relating to both the IRS Changes and the Audit Adjustments. Shortly thereafter she was informed that a supervisor was questioning whether the refunds should have been approved. On June 3, 1993, an auditor in the Corporate Refunds Branch of the Division prepared a memorandum concluding that refunds had been improperly issued because: (i) plaintiff had not reported the IRS Changes as required by N.J.S.A. 54:10A-13, that is, within ninety days after the IRS made its final determination, see Lenox I, supra, 19 N.J. Tax at 444-46, and (ii) the refund claims relating to Audit Adjustments were not filed within the twoTyear statutory time limit. The supervising auditor in the Special Audit Branch received this memorandum on June 4, 1993. The Division continued to review and consider the matter during 1993 and following years.
Plaintiff received no notification of the Division’s concerns until the Division issued a Notice of Erroneous Refund dated December 20, 1996, approximately four and one-half years after the refund payment. The Notice stated that the refunds totalling $881,695 should have been denied because of plaintiffs untimely filing of refund claims and reports of IRS Changes, and directed plaintiff to return the refunds. The Notice also stated that a Notice of Assessment dated July 21,1989 had denied, as untimely, plaintiffs refund claim for FYE April 30, 1985. However, this Notice merely set forth that, based on the Director’s audit, plaintiff had *469 no additional liability. Attached to the Notice was a schedule showing overpayments of $229,813 for FYE April 30, 1985 and $73,083 for FYE April 30, 1986, and a deficiency of $88,686 for FYE April 30, 1987. The schedule reflected that the deficiency was paid by crediting a portion of the overpayments. The Notice of Assessment contained no statement regarding the refusal of the Director to refund the $214,210 balance of the overpayments.
II.
Contentions of the Parties
Plaintiff contends that the Director has neither statutory nor inherent authority to recover the refunds in issue. Plaintiff also contends that the recovery of the refunds is equivalent to an additional assessment of taxes and that the time period for additional assessments expired before the Notice of Erroneous Refund was sent. In addition, plaintiff asserts that: (i) because of the four and one-half year- gap between the date the refund cheek was issued and the date of the notification to plaintiff that the Director claimed the refunds were erroneously paid, the Director’s claim for recovery of the refunds is barred by laches or estoppel; and (ii) issuance of the refund check constituted a waiver by the Director of his defenses based on the timeliness. Finally, plaintiff argues that, even if all or any portion of the refunds is recoverable, no interest should be payable to the Director.
With respect to its claim for the FYE April 30, 1988 refund, plaintiff asserts that the refund should have been paid promptly after the entry of the Tax Court judgment, and that the refund should bear post-judgment interest at the rate imposed by the New Jersey Court Rules.
In support of his effort to recover the $881,695 refund payment, the Director relies on his inherent authority to recover monies erroneously paid. He does not contend that he has express statutory authority to do so. The Director also asserts that no statute of limitations applies to recovery of erroneous refunds and that the doctrines of laches, estoppel, and waiver are not applica *470 ble. In particular, the Director argues that plaintiff did not rely to its detriment on the payment of the refunds other than by retaining the money, and asserts that payment of the refunds did not constitute a waiver of the time limit for filing reports of IRS Changes or for the filing of refund claims. Finally, the Director contends that he is entitled to interest on the refunds recovered, but should not be required to pay interest on the FYE April 30, 1988 refund which he retained because Lenox had not repaid the erroneously issued refunds.
III.
The Director’s Right to Recover Erroneous Refunds
The Director’s right to recover improperly issued refunds was discussed in Playmates Toys, Inc. v. Director, Div. of Taxation, 316 N.J.Super. 509, 720 A.2d 655 (App.Div.1998), aff'd, 162 N.J. 186, 742 A.2d 968 (1999). There, after an audit was conducted in 1995, the Director determined that the taxpayer had made overpayments of CBT for 1989 and 1990 and that a deficiency existed for 1991 and 1992. The Director offset the overpayments against the deficiency, leaving a net overpayment of $63,463. He did not refund this amount because the statutory time period for filing refund claims had expired.
On March 18, 1996, the taxpayer filed a protest and request for a conference with respect to the assessment for 1990 and 1991 and a separate request for refund of the $63,463 net overpayment. Nine days later, the Refund Branch in the Division issued the refund.
After reviewing the protest of the assessment for 1990 and 1991, the Division’s Conference and Appeals Branch telephoned the taxpayer to schedule a conference. The taxpayer responded that its request for a conference would be withdrawn because the refund had been paid. Thereafter, the Director issued a final determination letter upholding the assessment and directing the taxpayer to return the refund.
*471 The Appellate Division held that the Director had inherent authority to recoup erroneous refunds. Playmates Toys, Inc. v. Director, supra, 316 N.J.Super. at 513, 720 A.2d 655. The court rejected as having “no merit” the following arguments advanced by the taxpayer in opposing return of the refund:
1. issuance of the refund constituted a waiver of the two-year statute of limitations then applicable to refund claims under N.J.S.A. 54:49-14; [1]
2. the absence of express statutory authority precluded recovery of the refund; and
3. recovery of the refund was barred because the five-year time period for an assessment of additional taxes for 1989 and 1990, contained in N.J.S.A. 54:10A-19.1(b),[2] had expired as of the date of the final determination. Playmates Toys, Inc. v. Director, supra, 316 N.J.Super, at 512, 720 A.2d 655.
As to waiver, the court concluded that mere retaining of the refund amount was not the type of reliance on the actions of the Director which would constitute waiver. Id. at 513, 720 A.2d 655. In reaching this conclusion, the court relied on Marrinan v. Director, Div. of Taxation, 17 N.J.Tax 47, 58 (Tax 1997), which held that retention of erroneously refunded taxes would not constitute sufficient reliance for equitable estoppel to apply.
Plaintiff asserts that waiver, laches, estoppel, lack of statutory authority, and expiration of the time period for assessment of additional taxes all bar the Director from recovering the refunds in question here. I reject those contentions based on the Appellate Division’s decision in Playmates Toys. Mere retention of erroneously refunded monies does not constitute sufficient reliance for waiver, laches, or estoppel to apply. See Marrinan v. Director, supra, 17 N.J. Tax at 58.
The Supreme Court affirmed the Appellate Division’s decision “substantially for the reasons stated by the Appellate Division.” *472 Playmates Toys, Inc. v. Director, Div. of Taxation, 162 N.J. 186, 742 A.2d 968 (1999). However, the Court added the following:
[T]his judgment does not confer on the Division of Taxation an unlimited inherent authority to correct and revise erroneous tax determinations once made. The powers of the Division are not boundless. Rather, given the administrative history of the Division’s earlier determination (communicated to the taxpayer) that the taxpayer was not entitled to a refund because of the statute of limitations, the recovery of the funds here is more akin to the correction of a clerical error that led to the mailing of a tax refund check to which the taxpayer was not entitled, rather than the correction of an error in judgment. See Lockwood v. Walsh, 137 N.J.Eq. 445, 450, 45 A.2d 305 (Prerog.Ct.1946) (implying that State Tax Commissioner possesses inherent authority to correct error of mathematical calculation).
[Id. at 187, 742 A.2d 968.]
Plaintiff contends that, in relying on Lockwood v. Walsh, the Supreme Court established a standard for distinguishing between clerical errors and errors in judgment which bars recovery of the refund monies issued to plaintiff. Lockwood involved a final determination by the Director in 1942 as to liability for transfer inheritance tax. After treating an interest of decedent Charles Carscallen in the estate of his father as a contingent interest, the Director issued a tax refund. In 1945, in the context of litigation seeking a construction of the father’s will, a court determined that the interest of Charles Carscallen in his father’s estate was a vested interest. Promptly thereafter, the Director sent out a notice of a revised assessment and sought recovery of the previously refunded amount plus additional taxes. The court held that no statutory authority existed for the assessment and the assessment was not otherwise permitted.
I am not here concerned with an error of mathematical calculation, the certainty of which could always have been demonstrated, but rather with an obliquity of judgment. I am importuned to hold that a conclusion of the Director resolutely contrived in the light of a full disclosure of the facts must continue to cower in the suspense of some eventual divergent or oppugnant opinion perchance to be rendered in some independent and collateral proceeding.
Assuredly in the field of social and public economics, there is a conspicuous virtue in the policy that gives finality to authoritative adjustments of tax as well as other financial liabilities.
[Lockwood v. Walsh, supra, 137 N.J.Eq. at 450-51, 45 A.2d 305.]
The agent of the State with knowledge of all of the facts fulfilled his duty to the best of his ability, and the estate of the decedent discharged its obligation. Must *473 the eonclusiveness of that assessment be destroyed solely by the adventitious adjudication in the Lockwood ease? I think not.
[Id. at 452, 45 A.2d 305.]
Based on Lockwood, plaintiff argues that the Division’s decision to issue the $881,695 total refund was a final and conclusive determination of plaintiffs tax liability which cannot be reopened four and one-half years later. Plaintiff asserts that the Division employee in the Special Audit Branch processing plaintiffs refund claims exercised judgment in determining that the refunds were due and payable and in determining the amounts to be refunded. Plaintiff emphasizes that, at the time she authorized the refunds, the person in the Special Audit Branch was aware of a concern relating to the timeliness of plaintiffs reports of IRS Changes, conferred with others in the Division, and thereafter decided that the refunds should be paid. Plaintiff characterizes these events as the type of “error in judgment” which, under the Supreme Court’s decision in Playmates Toys, does not provide a basis for recovery of an erroneously issued refund.
The Director responds that the error which led to the refund payment to plaintiff was not a final determination of plaintiffs tax liability but was merely an error as to the timeliness of plaintiffs reports of IRS Changes and Audit Adjustment refund claims. This, according to the Director, was not an “error in judgment” under Playmates Toys but was a “clerical error,” as that term was used by the Supreme Court, so that the refunds are subject to recovery.
The limitations on the Director’s authority to recover erroneously paid refunds have not been delineated beyond the general statement contained in the Supreme Court’s Playmates Toys opinion, and no court has defined the distinction, in this context, between a clerical error and an error in judgment. Guidance as to that distinction appears in decisional law in New Jersey and elsewhere, which has consistently conferred upon taxing and other governmental authorities broad powers to recover monies erroneously paid. For example, in Redding v. Burlington County Welfare Bd., 65 N.J. 439, 323 A.2d 477 (1974), our Supreme Court, although indicating that the refund of erroneously paid welfare *474 benefits would be inappropriate under the particular facts before it, stated that:
When an overpayment has been made, the public interest requires that the board have the power to seek out the recipient and recover the amount of the overpayment if the person has the means or ability to repay. The right and the power to seek to recoup benefits illegally paid, unless specifically prohibited, is inherent in the delegation of authority to administer the program.
[Id. at 445, 323 A.2d 477.]
Similarly, in Williams v. Board of Education of Deptford Tp., 192 N.J.Super. 31, 469 A.2d 58 (App.Div.1983), the court permitted the Board of Education to recover erroneously paid salary, stating:
We must be mindful of the fact that public funds are involved. An erroneous payment due to a misinterpretation of the law inures to the detriment of the taxpayers of the school district. Hence, on balance equity demands that the Board be permitted to recoup moneys paid under such circumstances and rectify its error.
[Id. at 42, 469 A.2d 58.]
See also Board of Educ. of Passaic v. Board of Educ. of Wayne Tp., 120 N.J.Super. 155, 163-64, 293 A.2d 445 (Law Div.1972).
Authorities outside of New Jersey also have recognized the inherent broad authority of a public body to recoup erroneously paid monies on the theory that the monies belong to the taxpayers, and the public interest must be protected. In Turner Construction Co. v. State Tax Comm’n, 57 A.D.2d 201, 394 N.Y.S.2d 78 (1977), the New York appellate court stated: “We find no statutory time barrier prohibiting recovery of erroneous refunds. Public policy favors full and uninhibited enforcement of the Tax Law, and the general rule that estoppel cannot be employed against the state or governmental subdivision is particularly applicable with respect to the Tax Commission.” Id. at 80 (citations omitted). In United States v. Bell, 818 F.Supp. 444 (D.Mass.1993), the court permitted recovery by the Internal Revenue Service of an erroneously paid refund, stating as follows:
In the ordinary case, the recipient of an erroneously issued tax refund would be unjustly enriched if allowed to retain the refund. Thus, the government will almost invariably be entitled to recover the full amount of any refund that it demonstrates to have been erroneously issued.... [T]he mere fact that a taxpayer materially and detrimentally relied upon entitlement to an erroneous refund will not preclude recovery by the government. Moreover, a defendant can almost never successfully argue that the government should be estopped by the conduct of its agents from recovering an erroneous refund.
*475 [Id. at 449 (citations omitted).]
Finally, in United States v. Wurts, 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932 (1938) the Supreme Court stated as follows with respect to the United States Government’s authority to collect erroneously paid tax refunds:
The Government by appropriate action can recover funds which its agents have wrongfully, erroneously or illegally paid. “No statute is necessary to authorize the United States to sue in such a ease. The right to sue is independent of statute.” ... Ordinarily, recovery of government funds, paid by mistake to one having no just right to keep the funds, is not barred by the passage of time— The Government’s right to recover funds, from a person who received them by mistake and without right, is not barred unless Congress has 'dearly manifested its intention’ to raise a statutory barrier.
[Id. at 303 U.S. at 415-16, 58 S.Ct. at 638, 82 L.Ed. at 934 (dtations omitted) (footnotes omitted).]
Based on the language employed by the Supreme Court in Playmates Toys, and the other decisions discussed above, I conclude that the concept of clerical error as used in Playmates Toys should be broadly construed and the concept of error in judgment should be narrowly construed. This construction will effectuate the general policy of conferring on the Director broad powers to recoup erroneously paid refunds, thereby protecting the public fisc and promoting the public interest. Accordingly, I define the phrase “error in judgment,” as used in Playmates Toys, to refer only to an erroneous final determination of the merits of a taxpayer’s liability for tax, resulting from a mistaken interpretation of substantive law or a misunderstanding of the facts relating to the determination. Under this definition, an error relating to the timeliness of the filing of a report of IRS Changes or the timeliness of a refund claim constitutes a clerical error.
As discussed above, I previously determined that plaintiffs reports of IRS Changes were not filed in a timely manner so that plaintiff was not entitled to refunds based on those changes. Lenox I, supra, 19 N.J. Tax at 448-53. I also determined that the claims for refunds relating to the Audit Adjustments were untimely, and that plaintiff was not entitled to refunds based on those adjustments. Id. at 447. The discussion in Lenox I of the timeliness of plaintiffs filing of reports of IRS Changes is compre *476 hensive. However, the discussion of the timeliness of the refund claims relating to the Audit Adjustments warrants expansion. The relevant facts are the following. Plaintiffs CBT return for FYE April 30, 1985 was filed on February 3, 1986, its return for FYE April 30, 1986 was filed on February 17, 1987, and its return for FYE April 30, 1987 was filed on February 17, 1988. Copies of Federal Form 1120X claiming abandonment losses for fiscal years ending April 30, 1985 and 1986 were filed with the Division on or shortly after March 31, 1989, more than two years after the returns for those years were filed.
Under N.J.A.C. 18:2-5.2, a taxpayer may claim a refund of overpaid taxes by filing a return or by filing a claim for refund on a designated form. Therefore, the Forms 1120X which plaintiff filed with the Division constituted claims for refunds. Because the forms were filed more than two years after the filing dates of plaintiffs CBT returns for fiscal years ending April 30, 1985 and 1986, the claims were untimely under N.J.S.A. 54:10A-14 as then in effect.
In summary, I conclude that, in issuing $881,695 of erroneous refunds to plaintiff, the Division made a clerical error under Playmates Toys and, therefore, the Director is entitled to recoup the full amount of the refunds.
IV.
Interest on the Erroneous Refunds
The Director claims that, in addition to his inherent right to recover erroneous refunds, he has the inherent right to collect interest on the amount recovered. He relies on Fotta v. Trustees of the United Mine Workers of America, 165 F.3d 209 (3d Cir.1998). In that case, the court held that a beneficiary of an ERISA plan had the right to recover interest on delayed payments even without express statutory authority for the payment of interest. The Director also relies on Rova Farms Resort, Inc. v. Investors Ins. Co. of America, 65 N.J. 474, 323 A.2d 495 (1974), in which our Supreme Court recognized that pre-judgment interest *477 is appropriate to compensate a party wrongfully deprived of the use of money, stating that “the interest factor simply covers the value of the sum awarded for the pre-judgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled.” Id. at 506, 323 A.2d 495 (citations omitted). Plaintiff responds that, in the absence of express statutory authority, the Director may not recover interest on an erroneously paid refund, citing N.J.S.A. 54:10A-19.1(a), (deleted by L. 1992, c. 175, § 21) and N.J.S.A. 54:49-6a (providing for interest on a tax deficiency to be assessed with the deficiency). Plaintiff argues that interest cannot be assessed because the time period for assessment of additional taxes against plaintiff expired years before the Director’s December 20, 1996 Notice of Erroneous Refund. In addition, plaintiff contends that no court rule permits the awarding of pre-judgment interest, that the allowance of pre-judgment interest should be guided by equitable considerations, and that the Director’s conduct in this matter does not warrant an award of interest.
The disputed refund amount was paid to plaintiff on July 8, 1992. The first notification to plaintiff that the Director claimed the refund was erroneous is dated December 20, 1996. Plaintiff protested the Director’s effort to recoup the refund, and the Director issued his Final Determination on October 7, 1998. Accordingly, from July 1992 until the end of December 1996, plaintiff had no knowledge, information, or notice that its retention of the refund amount was in dispute or that, by retaining the refund amount, it risked incurring interest liability to the Director. Imposing interest liability on plaintiff for the period preceding the date plaintiff had notice of the Director’s claim would be inequitable. Consequently, I conclude that no interest is due on the amount in question through December 23, 1996 (allowing three days for receipt of the December 20, 1996 Notice from the Director, cf. R. 1:3-3).
Once plaintiff received the Notice of Erroneous Refund, plaintiff was chargeable with knowledge that failure to repay the refund deprived the Director of the use of monies claimed by him. In *478 general, disputing a tax liability does not prevent or defer the accrual of interest. See N.J.S.A. 54:49-3 and -6a (imposing interest from the original due date of taxes or a tax deficiency, even where the taxpayer contests liability for the amount claimed). Therefore, requiring plaintiff to pay interest on the erroneous refund commencing December 24, 1996 is consistent with the general statutory requirements regarding interest, but tempered by equitable considerations relating to plaintiffs receipt of notice of the Director’s claim.
This situation does not involve an assessment of additional taxes. The time period for imposing an assessment as to fiscal years ending April 30, 1985, 1986 and 1987 expired long before December 20, 1996. See N.J.S.A. 54:10A-19.1(b) (requiring that, for the years at issue, an assessment of additional taxes be made within five years from the date of filing of a CBT return). The Director relies on his inherent authority to recover erroneously paid refunds. Under these circumstances, equitable considerations should enter into the determination of the appropriate interest rate. If the claim for return of the refund had been in the form of an assessment of taxes, the applicable statutory rate under N.J.S.A, 54:49-6 would apply. That rate is currently the prime rate for each month plus three percent, compounded annually. Here, I conclude that the appropriate interest rate should be the rate which the Director is required by statute to pay on refunds issued to taxpayers. That rate is set forth in N.J.S.A. 54:49-15.1 as “the prime rate, determined for each month or fraction thereof, compounded annually at the end of each year, from the date that such interest commences to accrue to the date of refund.”
V.
The FYE 1988 Refund
Plaintiff claims that the Director should be compelled to refund the sum of $452,551 relating to plaintiffs FYE April 30, 1988 CBT return, together with post-judgment interest on that *479 amount. The Director’s agreement as to the refund is set forth in the Stipulation of Dismissal dated April 12, 1997 which provides:
It is further stipulated and agreed that defendant [Director] will approve plaintiffs 1988 Corporation Business Tax refund claim in the amount of $452,551, as set forth in defendant’s April 8,1997, revised Final Determination; ...
Approximately four months before the date of the Stipulation, the Division had sent the Notice of Erroneous Refund described above. The Stipulation makes no reference to the Notice, and contains no provisions giving the Director the right to defer payment of the “approved” refund pending resolution of his erroneous refund claim or to offset the amount of the FYE April 30, 1988 refund against the amount of the erroneous refund.
The Director contends that no interest should be awarded because: 1) he had a legitimate basis for not paying the refund, that is, his contention that $881,695 of erroneously paid refunds should be returned, 2) the judgment entered by the Tax Court on the basis of the Stipulation of Dismissal was not a judgment for payment of money, and, therefore, the court rule relating to interest on money judgments, R. 4:42-11(a), is not applicable, and 3) the absence of statutory authority precludes an award of post-judgment interest.
The Director has not cited statutory authority or any other authority to support or justify his withholding payment of the FYE April 30, 1988 refund amount, nor has he explained the omission from the Stipulation of Dismissal of any provision relating to withholding payment. Under N.J.S.A. 54:49 — 16(b), the Director may “credit the erroneous payment of tax to the account of the taxpayer to offset the amount of a deficiency assessment.” Here, the Director made no deficiency assessment against plaintiff. Because the Director had no statutory authority to offset the FYE April 30, 1988 agreed refund against the disputed erroneous refund for preceding years, and did not reserve the right to do so in the Stipulation of Dismissal, the agreed FYE April 30, 1988 refund should have been paid promptly after the entry of judgment in the Tax Court based on the Stipulation of Dismissal.
*480 Based on the contents of the Stipulation of Dismissal, the Tax Court Judgment should be treated as a “judgment!] for the payment of money” under R. 4:42-ll(a). Although the Stipulation doés not contain an express agreement by the Director to pay the sum of $452,551, the language of the Stipulation evidences that the parties contemplated payment of the agreed amount in due course. The Director’s agreement to “approve” the refund was equivalent to an agreement to pay the refund. Plaintiff agreed to dismiss its appeal in consideration for this agreement and the anticipated payment of the approved amount.
I reject the Director’s argument that, even if the Tax Court Judgment is treated as a monetary judgment, post-judgment interest may not be awarded because R. 4:42-ll(a) is insufficient to authorize interest in the absence of statutory authority. The right to post-judgment interest in the tax context was considered in Employers’ Fire Insurance Co. v. Director, Div. of Taxation, 8 N.J.Tax 43 (Tax 1985). There, the taxpayer sought post-judgment interest on refunds awarded pursuant to a Tax Court judgment. After acknowledging that payment of post-judgment interest was not authorized by statute, the court analyzed cases imposing post-judgment interest on awards against government entities and concluded that “post-judgment interest may be awarded in state tax cases pursuant to R. 4:42-ll(a) not as a matter of course but only where equitable principles so require.” Id. at 49. Here, because the Director improperly did not pay the agreed refund, equitable principles require the imposition of post-judgment interest.
The holding in New York Life Insurance Co. v. Lyndhurst Tp., 280 N.J.Super. 387, 655 A.2d 481 (App.Div.1995), does not preclude the award of post-judgment interest to plaintiff. In New York Life, the Appellate Division ruled that the award of prejudgment and post-judgment interest on a property tax refund was limited to the amount expressly provided by statute. The matter before me is not a property tax case, and the CBT statutes applicable to refunds contain no provisions relating to interest. N.J.S.A. 54:49-15.1 provides for the payment of interest only on *481 taxes paid with respect to returns due on and after January 1, 1994. N.J.S.A. 54:49-15 and -16 generally relate to the payment of refunds, but do not provide for interest.
Based on the preceding analysis, I conclude that the sum of $452,551 should be refunded to plaintiff, together with interest at the rates applicable to the years in question under R. 4:42-ll(a). Interest should be calculated from June 13, 1997, the date of the Tax Court Judgment, to the date of payment of the refund.
VI.
Summary
Based on the analysis and conclusions in Lenox I and in this Opinion, judgment will be entered as follows:
(1) in favor of the Director, dismissing plaintiffs claims for refunds;
(2) in favor of the Director, requiring plaintiff to return the sum of $881,695 within thirty days after the date of entry of the judgment, with interest thereon from December 24, 1996 to the date of payment at the prime rate, determined for each month or fraction thereof, compounded annually at the end of each year;
(3) in favor of plaintiff, requiring the Director to refund the sum of $452,551 within thirty days after the date of entry of the judgment, with interest from June 13, 1997 to the date of payment at the rates applicable under R. 4:42-ll(a).
Counsel for the Director, after consultation with counsel for plaintiff, shall submit a form of judgment setting forth the amounts of interest due under (2) and (3) above to a specified date, and the per diem interest thereafter. See R. 8:9-3. If the parties are unable to agree as to the interest amounts, each shall submit computations to the court pursuant to R. 8:9-4.

The time period for refund claims was expanded, effective July 1, 1993, to four years after the date of assessment of any original or additional tax. L. 1992, c. 175, §§ 5 and 44. See N.J.S.A. 54:49-14a as now in effect.

 The time limit for assessing additional tax was reduced, effective July 1, 1993, to four years from the date of filing of a return. L 1992, c. 175, §§ 3, 21 and 44. See N.J.S.A. 54:10A-19.1(d) and N.J.S.A. 54:49~6b as now in effect.