SUNDAR, J.T.C.
This is the court’s opinion in connection with the parties’ respective motions for summary judgment in the above captioned Gross Income Tax (“GIT”) matters. Defendant (“Taxation”) contends that plaintiffs should repay the GIT amounts erroneously refunded to them because New Jersey source trust income is statutorily taxable when paid/distributed to non-residents. Plaintiffs, Pennsylvania residents, claim that since they had protested Taxation’s initial denial of the refunds pursuant to which they received the GIT refunds, Taxation should be bound by its initial decision to grant the refunds. They also contend that by now seeking repayment of these refunds, Taxation has deprived them the ability to claim credit from Pennsylvania for taxes paid to New Jersey.
As more fully set forth below, the court finds that Taxation is entitled to repayment of refunds erroneously paid to plaintiffs. It is undisputed that plaintiffs, as beneficiaries of New Jersey resident trusts, received distributions from those trusts for the tax years at issue. Plaintiffs concede that the statute imposes GIT upon such distributions. Therefore, the court finds that plaintiffs were not entitled to the refunds. The court also finds that *314 Taxation is entitled to recover the erroneous refunds because the refunds were made pursuant to a clerical error.

FACTS AND PROCEDURAL HISTORY

Plaintiffs are minors and residents of Pennsylvania. Plaintiff Robert Hill is a beneficiary of two trusts: (i) the Robert H. Hill 11/2/98 Trust (“Robert Hill Trust”) and (ii) the Bruce & Marcia Mahon 1/12/99 Irrevocable Trust (“Mahon Trust”), both of which are New Jersey resident trusts. Plaintiff Sarah Hill is also a beneficiary of two trusts: (i) the Sarah K. Hill 11/2/98 Trust (“Sarah Hill Trust”) and (ii) the Bruce & Marcia Mahon 1/12/99 Irrevocable Trust (“Mahon Trust”), both of which are also New Jersey resident trusts. The Trustee for these three trusts is also a New Jersey resident.

(A) Tax Year 2006

On or about October 2007, plaintiff Robert Hill filed a New Jersey non-resident GIT return. He reported $203,387 as trust income on Line 26, Column A (amount of gross income from “everywhere”), and zero on Line 26, Column B (amount of income from New Jersey sources). Thus, no trust income was allocated to New Jersey. This was despite the fact that the NJK-1 (statement attached to the trust’s income tax return, Form NJ-1041, reporting the beneficiary’s share of income from the trust) from the Robert Hill Trust and the Mahon Trust showed that plaintiff received New Jersey source income of $96,427 and $4,007 respectively.
Since plaintiff reported “zero” as New Jersey source income, he also reported “zero” as the amount of GIT due. Consequently, he claimed the estimated taxes of $4,947 (paid by the trustee) as a refund.
The facts in the preceding two paragraphs also apply to plaintiff Sarah Hill, except that she reported $203,313 as trust income on Line 26, Column A (amount of gross income from “everywhere”), and the NJK-ls filed by the Robert Hill Trust and the Mahon Trust as part of the respective fiduciary returns, showed that she had received New Jersey source income of $96,371 and $4,008 *315 respectively. She also claimed a refund of the estimated taxes of $4,947 (paid by the trustee).
On or about March 6, 2008, Taxation issued a “Current Statement of [plaintiffs] Account” to plaintiff Robert Hill. The Statement noted that it was “based on the return filed” but also “refieet[ed] any adjustments made by” Taxation. The Statement listed the amount of the “everywhere” trust income as reported, the New Jersey source trust income as reported (i.e., zero), and showed GIT based on the “everywhere” income as $10,765, and “zero” New Jersey income as reported, and thus, “zero” GIT. It also showed “zero” as estimated tax payments when the filed return showed $4,947. The Statement of Account indicated that “request refund denied per above calculations.” There was no explanation or attachment explaining the reasons for the refund denial. Nor were there any appeal or administrative protest rights set out on the Statement of Account.
By letter dated April 29, 2008, plaintiff Robert Hill (through his father) objected to the refund denial, deeming his objection to be an appeal. The letter explained that plaintiff was never a New Jersey resident, but was a Pennsylvania resident, therefore, he was not required to file a GIT return or pay GIT on income reported to Taxation by the trusts. Plaintiff further asserted that as a Pennsylvania resident, any trust income is taxable only by Pennsylvania. He concluded the “appeal” by stating that the nonresident GIT return was filed solely because the “trust” had made “erroneous estimated tax payments to ... New Jersey” when those taxes should have been remitted to Pennsylvania.
Taxation then issued another “Current Statement of [plaintiffs] Account” to plaintiff Robert Hill on or about May 25, 2008. This Statement was the same as the one issued on March 8, 2008, except it listed an amount of $4,947 as estimated tax paid, which amount was reflected as the total payment or credit in the New Jersey source Column B. By check dated May 29, 2008, Taxation issued plaintiff a refund of $4,947.
The court was not provided with any “Current Statement of Account” for plaintiff Sarah Hill, but it is undisputed that she was *316 also refunded an amount of $4,947. Plaintiffs’ cross-motion maintains that the same initial denial, followed by an “appeal” followed by the refund payment occurred for plaintiff Sarah Hill also. Taxation has not refuted, nor provided any evidence to refute these factual assertions, therefore, the court will accept the same under the standards applicable to a motion for summary judgment.
Almost two years later, on July 22, 2010, Taxation issued a Notice of Deficiency pursuant to an audit of plaintiffs’ 2006 nonresident GIT returns.[1] The auditor added an amount of $104,940 in Column A as plaintiff Robert Hill’s distributive share of partnership income from all sources (and $108,942 for plaintiff Sarah Hill), and $84,187 in Column B as New Jersey source income in this category ($84,188 for plaintiff Sarah Hill). This resulted in additional GIT of $4,771.50 for both plaintiffs. The attached explanation noted that the partnership income was in accordance with the NJK-ls received from a partnership, Bowsprit Associates, LP (in which the Robert Hill Trust was partner) and from the Mahon Trust, which reported $84,187 as New Jersey source income. For plaintiff Sarah Hill, Taxation’s explanation was that the addition was based upon the NJK-l’s received from Bowsprit Associates, LP and the Trustee.
On August 31, 2010, plaintiff Sarah Hill filed a protest against the Notice of Deficiency. The letter did not elucidate the reasons for the protest but simply requested an administrative conference with Taxation.
*317 On May 6, 2011, Taxation issued revised Notices of Deficiency to both plaintiffs. This notice deleted the previously assessed distributive share of partnership income. However, it also changed the reported trust income from $203,387 to $111,334 in the “everywhere” Column, and from zero to $100,434 in the New Jersey Column (and from $203,313 to $111,281 in the “everywhere” Column, and from zero to $100,379 in the New Jersey Column for plaintiff Sarah Hill). The attached explanation stated that the Robert Hill Trust reported $96,427 as New Jersey source income on its Form NJK-1, and that the Mahon Trust reported $4,007 as income sourced to New Jersey (and for plaintiff Sarah Hill, the addition was based upon the NJK-ls issued by the Sarah Hill Trust reporting $96,371 as New Jersey source income, and the Mahon Trust reporting $4,008 as New Jersey source income). These changes resulted in GIT of $4,422 (and $4,418 for Plaintiff Sarah Hill). Since Taxation had already refunded $4,947 to plaintiffs, it demanded the GIT due, plus interest and penalties for a total of $6,553.30 (from plaintiff Robert Hill) and $6,548.79 (from plaintiff Sarah Hill).

(B) Tax Year 2007

An identical factual and procedural pattern occurred for tax year 2007 as it had for 2006 except for variations in the nonresident GIT return filing dates (October 2008) and amounts reported on those returns. These amounts are as follows:
Plaintiff Robert Hill
NJ Source Income Per NJK-1 of Robert Hill Trust $56,840
N.T Source Income Per NJK-1 of Mahon Trust $ 2,800
Everywhere Income Reported on Nonresident GIT Return $84,345
NJ Source Income Reported on Nonresident GIT Return $ 0
Claimed Refund of Estimated Taxes Paid $ 5,000
Refund Paid by Taxation $ 5,000[2]
Plaintiff Sarah Hill
NJ Source Income Per N.TK-1 of Sarah Hill Trust $76,005
NJ Source Income Per NJK-1 of Mahon Trust $ 2,799
Everywhere Income Reported on Nonresident GIT Return $84,076
NJ Source Income Reported on Nonresident GIT Return $ 0
Claimed Refund ofEstimated Taxes Paid $ 5,000
Refund Paid by Taxation $5,000[3]
*318 Taxation’s audit also followed the same pattern as for tax year 2006 with slightly differing amounts. Thus, its initial Notices of Deficiency of July 22, 2010 included as New Jersey source income, certain amounts as distributive share of partnership income, and the revised Notices of Deficiency of May 6, 2011, included the amounts reported by the three trusts as New Jersey source income distributed to plaintiffs. The GIT assessed pursuant to these revised Notices was $2,511 (plaintiff Robert Hill) and $3,312 (plaintiff Sarah Hill).

(C) Taxation’s Final Determination

On July 28, 2011, Taxation issued two Final Determinations for each plaintiff for both tax years 2006 and 2007. These documents upheld the May 2011 revised Notices of Deficiency and explained that “New Jersey source trust income ... reported on the NJK-l’s” attached to “the Fiduciary returns must be reported as income on Column B of the” non-resident GIT return because *319 N.J.S.A 54A:5-1(h) specifically delineates income from trusts as a taxable category for GIT purposes. It demanded the assessed GIT plus penalties and accrued penalties as follows:
Plaintiff Robert Hill
Tax Year 2006: $8,765 (tax: $4,422; penalties $442; interest $1,901)
TaxYear2007: $3,842 (tax: $2,511; penalties $250; interest $1,080)
Plaintiff Sarah Hill
Tax Year 2006: $6,573 (tax: $4,419; penalties $442; interest $1,713)
Tax Year 2007: $4,835 (tax: $3,312; penalties $331; interest $1,192)
Plaintiffs timely challenged the Final Determinations in this court. These motions followed.

ANALYSIS

(A) Appropriateness of Summary Judgment

Summary judgment will be granted “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995).
The only issue is the propriety of Taxation’s demand for return of the refunds it paid plaintiffs for tax years 2006 and 2007. This can be disposed by way of summary judgment because there are no material facts in dispute as to the payment of refunds.

(1) Were Plaintiffs Entitled to the GIT Refunds?

It is undisputed that pursuant to “net gains or income derived through estates or trusts” is a category of gross income subject to the GIT. It is further undisputed that N.J.S.A. 54A:5-3 imposes GIT upon trust income which is either “required to be distributed or is in fact paid or credited to” the trust’s beneficiaries. Also undisputed is the fact that N.J.S.A. 54A:2-1.1 imposes GIT on nonresidents with New Jersey source income. Consequently, there is no issue that the GIT Act’s scheme imposes tax *320 upon New Jersey source trust income distributed or paid to a nonresident beneficiary.
Plaintiffs concede that they received distributions of New Jersey source income from the two resident trusts. Thus, under the statutory scheme, such distributions are taxable to the nonresident plaintiffs. Therefore, Taxation should not have issued the refunds to plaintiffs.[4]

(2) Can Taxation Seek Recovery of the Refunds paid to Plaintiffs?

N.J.S.A. 54A:9-4(c)(4) provides that “[a]n erroneous refund shall be considered an underpayment of tax on the date made, and an assessment of a deficiency arising out of an erroneous refund may be made at any time within 3 years from the making of the refund____” Taxation maintains that the plain language of this statute is ample authority for its GIT assessments of July 22, 2010 and May 6, 2011 (revised) which sought to recover the refunds made May 29, 2008 (for tax year 2006), and October 2008 (for tax year 2007).
There is no question that under the plain language of N.J.S.A. 54A:9-4(c) Taxation was authorized to treat the refunds it made as underpayment of GIT owed, and thus, recoverable provided the same were assessed within three years of the refund payment. Here, the assessments were timely.
*321 Plaintiffs argue that Taxation generated the refunds after they filed a protest against the Statement of Accounts issued by Taxation, which protest set forth the grounds for disagreement of the refunds sought (i.e., the non-resident status of the beneficiary plaintiffs). Thus, Taxation cannot re-visit its determination that plaintiffs were entitled to refunds, and plaintiffs should be entitled to rely upon the finality of Taxation’s decision to pay them the refunds.
Taxation argues that the N.J.S.A. 54A:9-4(c) controls regardless of any decisions made by Taxation that may have formed the basis to pay refunds to the plaintiffs, and regardless of the type or nature of the error. Thus, it contends, its “Statement of Account” denying the refund requested on the non-resident GIT returns and subsequent “Current Statement of Account” allowing the refund does not estop Taxation from assessing plaintiffs with the amounts erroneously refunded. For the same reason, namely, the language of N.J.S.A. 54A:9-4(c), Taxation argues that the precedent permitting refund recovery for clerical errors but not for errors in judgment, is inapplicable especially because the precedent addressed corporation business tax (“CBT”) not the GIT. Taxation notes that even if such precedent was applicable, the Statement of Accounts were in no manner a final determination, thus, the payment of refunds were due to a clerical mistake, and therefore entitled to be recovered.
The precedent alluded to by Taxation is Playmates Toys, Inc. v. Director, Div. of Taxation, 316 N.J.Super. 509, 720 A.2d 655 (App.Div.1998), aff'd, 162 N.J. 186, 742 A.2d 968 (1999), and Lenox, Inc. v. Director, Div. of Taxation, 20 N.J.Tax 464 (Tax 2002). Unlike here, both cases involved the CBT and the statute imposing such tax did not provide for recovery of erroneous refunds.[5] The courts thus allowed recovery of erroneous refunds based upon Taxation’s “inherent authority” to recoup the same but subject to the following limitation:
*322 We add only that this judgment does not confer on ... Taxation an unlimited inherent authority to correct and revise erroneous tax determinations once made. The powers of [Taxation] are not boundless. Rather, given the administrative histoiy of [Taxation’s] earlier determination (communicated to the taxpayer) that the taxpayer was not entitled to a refund because of the statute of limitations, the recovery of the funds here is more akin to the correction of a clerical error that led to the mailing of a tax refund check to which the taxpayer was not entitled, rather than the correction of an error in judgment.
[Playmates Toys, supra, 162 N.J. at 187, 742 A.2d 968]
The Court relied upon Lockwood v. Walsh, 137 N.J. Eq. 445, 450, 45 A.2d 305 (Prerog.Ct.1946) for its conclusion. That ease involved an inheritance tax matter where Taxation had issued a refund after deeming a certain interest of the decedent as “contingent” and subsequently sought repayment when a court had ruled the interest to be “vested.” Id. at 446-47, 45 A.2d 305. The court ruled that where Taxation had made an assessment pursuant to the statute, “with knowledge of all of the facts” presented to it, it cannot change its assessment because of a subsequent legal proceeding. Id. at 452, 45 A.2d 305. The court held that “in the determination of transfer inheritance taxation, [Taxation does not] function! ] ministerially in the sense that [it] acts ... without regard to and without the exercise of [its] own judgment upon the propriety and justification of [its] official action” because Taxation’s “duties necessitate mental resolutions and conclusions.” Id. at 450, 45 A.2d 305. The court noted that this is different from “an error of mathematical calculation the certainty of which could always have been demonstrated----” Id. at 451, 45 A.2d 305.
In Lenox, supra, the court ruled that “the concept of clerical error as used in Playmates Toys should be broadly construed and the concept of error in judgment should be narrowly construed.” 20 N.J.Tax at 475. Thus, an “error in judgment,” means “only ... an erroneous final determination of the merits of a taxpayer’s liability for tax, resulting from a mistaken interpretation of substantive law or a misunderstanding of the facts relating to the determination.” Ibid.
Taxation correctly points out that the crucial distinction between the GIT statute and the above precedent is that the GIT statute treats erroneous' refunds as a tax deficiency and limits Taxation’s ability to recover the same by mandating that an *323 assessment for erroneous refunds be made within a three-year period. See also N.J.S.A. 54A:9-2(g); Gordon v. Director, Div. of Taxation, 5 N.J.Tax 630, 635 (Tax 1983) (“By the terms of [the] definition [of N.J.S.A 54A:9-2(g) ], the erroneous refund sent to plaintiff is a ‘deficiency.’ ”). Whereas in the CBT statute or the Inheritance Tax statute, there was no authority to collect erroneously paid refunds, nor was there any limitations period for recovery of the same. Consequently, the courts were concerned with Taxation’s apparently limitless diseretion/ability to recoup any overpayment at any time.
Nonetheless, Taxation’s argument that in the GIT context, it has the unrestrained ability to recover erroneous refunds when timely assessed, regardless of the nature of the error, is troublesome. Under this argument, Taxation can re-visit its substantive decisions made after its audit becomes final due to lapse of the appeal/administrative protest time limitations; after the administrative appeal process is complete; or indeed, after a court renders a judgment with respect to Taxation’s final determination, if any of these events were to occur within three years of the refund payment. Even when erroneous refunds are claimed by taxpayers, the standard for issuing the refund is (1) “[w]here no questions of fact or law are involved and it appears from the records of the director [or from the audit of any taxpayer] that any moneys have been erroneously or illegally collected from [or paid by] any taxpayer or other person ... on under a mistake of fact or law----” and, (2) the claim for refund be made with a certain period. See N.J.S.A. 54:49-16; N.J.A.C. 18:2-2.10.[6]
Thus, N.J.S.A. 54A:9-4(c) cannot reasonably be construed to permit such an open ended result. It does not define the term “erroneous” or its parameters but simply provides an authorized *324 mechanism for recovering an erroneous refund. Nor has Taxation promulgated any regulations defining the term.[7]
The court therefore finds that the same concerns of unrestrained discretion present in Playmates Toys, supra, arise here in the GIT context when Taxation argues that N.J.S.A. 54A:9-4(e) encompasses any type of error or mistake, including but not limited to clerical errors or an error in judgment. Consequently, it is not unreasonable to extend the reasoning of Playmates Toys, supra, and Lenox, supra, to the interpretation and application of N.J.S.A. 54A:9-4(e).
Here, there is no question that the Statement of Accounts sent by Taxation for each tax year to plaintiffs were not “final determinations” by Taxation which were based upon the “merits” of plaintiffs' liability for tax. Law requires that the Taxation’s decisions (such as for instance, assessment or refund denial notices) contain language explaining, among others, the “procedures and time limits” to file an administrative protest with Taxation or an appeal from Taxation’s “final decision” as well as “procedures” for claiming a refund under a “law or regulation which may prohibit the application of the refund provisions of that law.” N.J.S.A. 54:48-6. Taxation has promulgated regulations carefully explaining these procedures for an administrative protest, including a protest denying a refund request. See N.J.A.C. 18:32-1.1 et seq.[8] Law further requires the Director, Division of Taxation to issue a “final determination” once a protest is filed, and an administrative review or hearing is completed. N.J.S.A. 54:49-18.
Here, none of these procedures occurred. The Statement of Accounts generated for each plaintiff appear to be simply that, namely, the status of the filed tax return in terms of net tax due to *325 or from the taxpayers based upon the dollar amounts reported on the filed tax returns. Thus, the Statements issued by an accounting section within Taxation, were akin to billing statements. They did not explain the law or regulations which barred the allowance of the refund claimed on the returns. They did not contain any of the required statements for appeal procedures. There were no administrative reviews by the Conference and Appeals Branch. There were no final determinations. The refunds were paid solely because the initial Statement of Accounts noted “zero” as estimated tax payments when in fact the reported amount of such taxes was $4,947.
Plaintiffs claim that their GIT returns included the K-l forms showing the allocated trust income, thus, Taxation must have exercised its judgment when deciding to use “zero” as the amount of New Jersey source income. To the contrary, it is clear that the K-ls were not considered, reviewed or audited on the merits because the Statement of Accounts parroted the information on the GIT returns as filed, including the “zero” amount of trust income sourced to New Jersey.
In sum, the court finds that the error in paying the refunds was purely clerical, and even mechanical, therefore, Taxation is entitled to impose an assessment for recovery of the refunds.

(3) Is the Recovery of the Refunds paid to Plaintiffs Barred Due to Equitable Estoppel?

Plaintiffs argue that they relied upon advice from Taxation that they, as non-residents, would not be subject to the GIT. They allege that when their father contacted Taxation in 2001/2002 to “determine whether Plaintiff would be subject to New Jersey taxes as a Non-Resident” (since at that time, both Trusts required plaintiffs’ parents to pay any income tax incurred from trust distributions to plaintiffs), an employee assured him that no GIT returns need to be filed or GIT paid, due to an existing “tax treaty” between the two sovereigns.
Plaintiffs’ argument lacks merit. First, the New Jersey sourced income from the trusts was distributed to plaintiffs in *326 2006 and 2007 (the tax years at issue herein). Therefore, any alleged verbal advice as to the non-taxability of such income is not credibly applicable and thus, cannot possible be reasonably relied upon. Second, the only agreement brought to the court’s attention which may be labeled as a “tax treaty” between Pennsylvania and New Jersey is a “Reciprocal Personal Income Tax Agreement” whereby only income from compensation of New Jersey or Pennsylvania residents is subject to tax by the non-resident sovereign. See N.J.A.C. 18:35—4.1. Third, and most importantly, even if the 2001/2002 verbal advice did allegedly occur, it simply cannot trump or overcome the statute’s imposition of GIT under N.J.S.A. 54A:2-1.1 and 54A:5-3. See generally Black Whale, Inc. v. Director, Div. of Taxation, 15 N.J.Tax 338 (Tax 1995). A taxpayer is bound by the law. Taxation’s employees cannot waive the requirements of the application of the law.
In any event, the relief afforded for “reasonably reliance” upon Taxation’s “erroneous advice” provided .to a taxpayer “in writing” is never an abatement of the tax due, but only a waiver of interest and penalty. See N.J.S.A. 54:49-11(b). Even this waiver is unavailable if the taxpayer had failed to “provide adequate or accurate information.” Ibid. Plaintiffs have provided nothing to this court to establish any of the requirements of this statute. Therefore, they are not entitled to relief under allegations of detrimental reliance of an alleged 2001/2002 verbal advice that as non-residents, they would not be subject to New Jersey GIT.
Plaintiffs also argue irreparable harm due to detrimental reliance upon the 2001/2002 alleged advice because they are now time barred from claiming any refunds of tax paid to Pennsylvania via a credit for the GIT. Pennsylvania has a three-year time limit from the date of tax payment for refund claims. 72 P.S. § 10003.1. While plaintiffs may now (at the litigation stage) be time-barred, they have not established that they were time-barred from seeking refunds vis-a-vis the date of payment of Pennsylvania income tax.[9] In any event, New Jersey cannot “rewrite” the *327 GIT statute “to address any inequities” due to “the application of another State’s statute of limitations for refund claims.” Vassilidze v. Director, Div. of Taxation, 24 N.J.Tax 278, 294 (Tax 2008) (rejecting plaintiffs claim that the timing of Taxation’s GIT assessment due to a denial of a resident credit inequitably prevented them from claiming a refund of personal income tax paid to Pennsylvania).
Moreover, reliance upon an alleged 2001/2002 verbal advice for the consequences of a 2007/2008 income tax event, as a basis for failing to allocate income to New Jersey and claim credit for taxes payable thereby on the Pennsylvania tax returns is simply not credible. See also Playmates Toys, supra, 316 N.J.Super. at 513, 720 A.2d 655 (“[wjhere the only reliance on the conduct of [Taxation] was in retaining [the erroneous refund]” there is no “detrimental reliance.”) (citation and quotations omitted). Thus, plaintiffs have not established any detrimental reliance which prevented them from amending their Pennsylvania income tax returns and seek refunds if any.

CONCLUSION

For the aforementioned reasons, Taxation’s motion for summary judgment is granted. Plaintiffs complaints are dismissed with prejudice.

 It appears that there was some correspondence before the July 2010 Notice of Deficiency because plaintiff Robert Hill wrote a letter dated June 30, 2010 to the auditor (who issued the Notice of Deficiency) referencing the auditor’s ”request[]’’ for "documentation that was involved in [plaintiff Robert Hill’s] appeal of” Taxation’s "denial of the refund requested from erroneous tax deposits for” tax years 2006 and 2007. Although the letter mentions that it encloses a copy of Taxation's request, the same was not provided to this court by plaintiff, and Taxation maintained that it did not make, and could not find, any such request. Plaintiffs letter continued by stating that he had "filed” an appeal (presumably his letter of April 29, 2008), in response to which Taxation had issued him the refund.

 Plaintiff Robert Hill did not provide the court with any "Current Statement of Account” or other document issued by Taxation showing whether the 2007 refund claimed on the GIT returns was initially denied and subsequently paid, or whether plaintiff objected to the initial refund denial, if any. In his cross-motion, plaintiff claims the same pattern of 2006 as to the refund denial/allowance occurred in 2007. It is undisputed that the refund was paid sometime in 2008 since information returns (Form 1099-G) were issued by New Jersey for both tax years in 2008.

 Plaintiff Sarah Hill provided a "Current Statement of Account" for tax year 2007 issued by Taxation on or about October 16, 2008. The Statement showed the income in the "everywhere” and the "New Jersey Source” columns as reported, computed the GIT for the income in the "everywhere" column, did not include the estimated tax payment, and showed "$0" as the amount of GIT owed, and "$0” as the total refund also. The Statement did not contain specific denial of the refund request as did the March 2008 Statement issued to plaintiff Robert Hill (for tax year 2006). In her cross-motion, plaintiff Sarah Hill claims (and Taxation claims lack of knowledge) that the same pattern of 2006 occurred in 2007, i.e., refund denial, plaintiff’s appeal against the denial, and the grant of the refund. It is undisputed that the refund was paid in 2008 since information returns (Form 1099-G) were issued by New Jersey for both tax years in 2008.

 It should be noted that N.J.S.A. 54A:5-3 permits a beneficiary to "exclude" any distributed trust income where the "trust has paid a tax under this act upon income distributed or to be distributed to a beneficiary.” Here, although plaintiffs contend that the Trustee paid the GIT (and provided a Trustee check dated 12/17/2006 in this regard for plaintiff Robert Hill for tax year 2006 as proof), they concede that the payments were for "estimated" taxes. The NJ-1041 returns (fiduciary tax returns) also show that neither the Robert Hill Trust nor the Sarah Hill Trust paid any taxes on the trust income distributed to either of them. Thus, there is no double payment of tax by the Trustee and by plaintiffs, thus, plaintiffs do not contend that they are permitted to exclude the distributed trust income from their New Jersey nonresident returns under N.J.S.A. 54A:5-3.

 The taxpayer in Playmates Toys argued that unlike the GIT Act which treated an erroneous refund as a recoverable underpayment of tax, there was no such authority under the CBT Act.

 N.J.S.A. 54:49-16 is part of the State Tax Uniform Procedure Law ("STUPL"). STUPL applies to all State taxes including the GIT (see N.J.S.A. 54A:9-1) and is aimed to "provide ... a uniform procedure to be followed by taxpayers in relation to any state taxes and afford uniform remedies and procedures” to Taxation for collection of taxes.

 The regulations reiterate the three and six year limitation periods for assessment of the GIT under N.J.S.A. 54A:9-4 but do not address erroneous refunds under N.J.S.A. 54A:9-4(c). See N.J.A.C. 18:2-2.6(c).

 The regulations include the address for the filing of a protest. See N.J.A.C. 18:32-1.8 ("[p]rotests ... and requests for administrative hearings should be submitted to the Conference and Appeals Branch, Division of Taxation, 50 Barrack Street, P.O. Box 198, Trenton, NJ 08695-0198”).

 The only documents showing a date relative to the Pennsylvania refund/tax payment is a computer printout showing a “status date” of 10/01/2008. If this *327 2008 date is used, then plaintiffs had until 2011 to claim refunds, by which time Taxation had already issued its 2010 Notices of Deficiency alerting plaintiffs of their GIT liability.