**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5201-18T2

IN THE MATTER OF
CONTESTING OF INVOICE
FOR FY 2019 FLEMINGTON
WET WEATHER FACILITY

_____

Submitted October 20, 2020 – Decided  December 21, 2020

Before Judges Gilson and Gummer.

On appeal from the New Jersey Department of Environmental Protection.

Offit Kurman, PA and George J. Tyler, PC, attorneys for appellant Raritan Township Municipal Utilities Authority (George J. Tyler, of counsel and on the briefs; James Aversano, III, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Department of Environmental Protection (Melissa H. Raksa, Assistant Attorney General, of counsel; Patrick S. Woolford, Deputy Attorney General, on the brief).

PER CURIAM

Raritan Township Municipal Utilities Authority (RT Authority) appeals

from a final agency determination by the New Jersey Department of

Environmental Protection (DEP), which denied the RT Authority's request to recalculate the 2019 fee for a wastewater treatment plant. Finding nothing arbitrary, capricious, or unreasonable in the DEP's determination, we affirm.

I.

The RT Authority, which is a public entity, operates two wastewater treatment plants: its Main Plant and the Flemington Wet Water Facility (WW Facility). The Main Plant handles most of the wastewater from the RT Authority's service area. The WW Facility operates during heavy wet weather, when more than 1.35 million gallons per day of wastewater is anticipated to flow to the Main Plant. When such weather occurs, the RT Authority diverts the excess flow to the WW Facility. Consequently, the WW Facility discharges wastewater only on certain days, which averages out to about one day per month.

The DEP regulates the discharge of pollutants to the surface and ground waters of New Jersey under the Water Pollution Control Act (the Act), N.J.S.A. 58:10A-1 to -43. Entities that discharge wastewater are required to have a New Jersey Pollutant Discharge Elimination System (NJPDES) permit. N.J.A.C. 7:14A-2.1(d); N.J.A.C. 7:14A-2.4(a) and (b).

In 2009, DEP issued the most recent NJPDES permit for the WW Facility, which became final in 2010.[1] The permit designated the WW Facility as a "major" facility because it has the capacity to handle 3.85 million gallons of wastewater per day and a major facility is defined as a facility that can handle one million gallons or more of wastewater per day. N.J.A.C. 7:14A-1.2.

The Act authorizes the DEP to "establish and charge reasonable annual administrative fees, which fees shall be based upon, and shall not exceed, the estimated cost of processing, monitoring and administering the NJPDES permits." N.J.S.A. 58:10A-9. For publicly owned facilities that discharge to surface water, like the WW Facility, the NJPDES fee is based, in part, on whether the facility is permitted as a "major" or "minor" facility. N.J.A.C. 7:14A-3.1 tbl. III.

The DEP has promulgated regulations governing how it calculates NJPDES fees. N.J.A.C. 7:14A-3.1. The fees for permits are proposed each year in an annual fee report, which lists all the proposed fees for individual facilities. N.J.A.C. 7:14A-3.1(b)(3). The DEP is required to hold a hearing for comments

---

[1] The RT Authority has appealed the final NJPDES permit, and that appeal is pending in the Office of Administrative Law. The designation of the WW Facility as a major facility is not being challenged in that administrative appeal. Moreover, the RT Authority is not challenging the permit in this appeal.

on the report and public notice is provided at least thirty days in advance. N.J.A.C. 7:14-3.1(b)(2). Thereafter, invoices for the annual fees are sent to individual facilities.

For at least fifteen years before 2019, the WW Facility was charged annual NJPDES fees as if it were a minor facility. For fiscal year (FY) 2019, however, the DEP calculated the fee for the WW Facility based on its designation as a major facility. Consequently, the proposed fee increased by more than 125% and went from a fee of just over $5500 for FY 2018 to a fee of just over $12,400 for FY 2019.

The proposed FY 2019 NJPDES fee and assessment were included in DEP's annual fee report, issued in April 2019. That fee report was posted on the DEP's website, and notices of the report were mailed to the RT Authority and other permit holders. The report was then opened to public comment, and the DEP held a public hearing on the report on May 1, 2019. 51 N.J.R. 1073(a) (June 17, 2019). The RT Authority did not submit any comments on the FY 2019 annual fee report.

On May 10, 2019, DEP sent the RT Authority an invoice for $12,476.78 for the FY 2019 NJPDES fee for the WW Facility. Three weeks later, on June 4, 2019, the RT Authority requested a recalculation of the fee, pointing out that

the WW Facility does not run continuously and runs only during severe wet weather. The RT Authority also requested an explanation of the fee, noting that the FY 2019 fee had gone up by almost $7000.

On June 17, 2019, DEP published its final FY 2019 annual fee report and assessment of fees. Ibid. Two weeks later, on July 1, 2019, DEP sent the RT Authority a letter denying its request for a recalculation of the FY 2019 fee. DEP acknowledged that it had previously calculated the fee for the WW Facility as if it were a minor facility. DEP went on to explain that it was correcting that mistake by calculating the FY 2019 fee based on the WW Facility being a major facility.

The RT Authority now appeals from the DEP's denial of its request to recalculate the FY 2019 fee for the WW Facility. The RT Authority also requested an adjudicatory hearing before the DEP to challenge the denial of the recalculation. In December 2019, DEP denied that request, and the RT Authority filed a separate appeal from that decision. We denied a request to consolidate that separate appeal, and that appeal is still pending. See In re Denial of Hearing Request, No. A-2341-19T2.

## II.

We begin our analysis by addressing a procedural issue. DEP contends that we should not consider the merits of this appeal because the RT Authority failed to challenge the designation of the WW Facility as a major facility and failed to challenge the final FY 2019 DEP annual fee report. We disagree.

The RT Authority is not challenging the designation of the WW Facility as a major facility. Instead, it appeals from the DEP's final decision to deny a recalculation of the FY 2019 fee assessment for the WW Facility. It is undisputed that the WW Facility was permitted as a major facility. It is also undisputed that before FY 2019, DEP calculated the fee for the WW Facility as if it were a minor facility, even though it was a major facility. Accordingly, the RT Authority is not seeking to change the designation of the WW Facility from a major to a minor facility. Rather, it is seeking to have the FY 2019 fee recalculated.

DEP regulations expressly allow permit holders to object to an assessment and to request DEP to recalculate a permit fee. N.J.A.C. 7:14A-3.1(a)(6). To request a recalculation, the permit holder must send DEP a written request within thirty days of the assessment of the fee. Ibid.

6

DEP sent the RT Authority an invoice for the FY 2019 fee for the WW Facility on May 10, 2019.  Less than thirty days later, on June 4, 2019, the RT Authority sent DEP a written objection requesting a recalculation.  Accordingly, procedurally the RT Authority properly requested the recalculation.[2]

### III.

On this appeal, the RT Authority raises three arguments, contending (1) the DEP's decision was arbitrary, capricious, and unreasonable because it lacked factual support and ignored the unique nature of the WW Facility; (2) DEP should be estopped from changing its assessment of the WW Facility as a minor facility to assessing it as a major facility; and (3) the prior assessments of the WW Facility as a minor facility were a de facto rule that cannot be changed without proper rule-making procedures.  We are not persuaded by any of these arguments.

### A.

An appellate court's review of an administrative agency's final decision is limited.  Commc'ns Workers of Am., AFL-CIO v. N.J. Civ. Serv. Comm'n, 234 N.J. 483, 515 (2018).  An agency's decision will not be reversed unless "(1) it

---

[2] The issue of whether the RT Authority properly sought an adjudicatory hearing concerning the recalculation is a separate issue that is currently not before us on this appeal.  Instead, it is part of the separate pending appeal.

7

was arbitrary, capricious, or unreasonable; (2) it violated express or implied legislative policies; (3) it offended the State or Federal Constitution; or (4) the findings on which it was based were not supported by substantial, credible evidence in the record." Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Env't Prot., 191 N.J. 38, 48 (2007) (citing In re Taylor, 158 N.J. 644, 656 (1999)). Moreover, courts generally afford substantial deference to an agency's interpretation of a statute that it is charged with enforcing. An appellate court, however, is not "bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Ibid. (quoting In re Taylor, 158 N.J. at 658).

"'[A] strong presumption of reasonableness' attends an agency's exercise of its statutorily delegated duties, which 'is even stronger when the agency has delegated discretion to determine the technical and special procedures to accomplish its task.'" Caporusso v. N.J. Dep't of Health & Senior Servs., 434 N.J. Super. 88, 103 (App. Div. 2014) (alteration in original) (quoting In re Holy Name Hosp., 301 N.J. Super. 282, 295 (App. Div. 1997)). "As long as the agency decision is contemplated under its enabling legislation, the action must be accorded a presumption of validity and regularity." A.M.S. ex rel. A.D.S. v. Bd. of Educ., 409 N.J. Super. 149, 159 (App. Div. 2009) (citation omitted).

B.

For FY 2019, DEP calculated the fee for the WW Facility based on the facility being a major facility. That calculation was consistent with the Act and DEP's regulations. See N.J.A.C. 7:14A-3.1(c) tbl. III. In denying the recalculation, DEP acknowledged it had changed how it calculated the fee for FY 2019 as compared to prior years. DEP conceded that it had incorrectly calculated prior fees by assessing the WW Facility as if it were a minor facility.

The issue before us is whether that correction was arbitrary, capricious, or unreasonable. We hold it was not. The DEP, like any governmental entity, can correct mistakes. See, e.g., Playmates Toys, Inc. v. Dir, Div. of Tax'n, 316 N.J. Super. 509, 513-14 (App. Div. 1998), aff'd o.b., 162 N.J. 186 (1999) (recognizing that state agencies have the inherent power to correct clerical mistakes, especially where the agency has the responsibility to take in or disburse monies); see also Hill v. Dir, N.J. Div. of Tax'n, 29 N.J. Tax 318, 322 (App. Div. 2016) (finding no error in agency's issuance of deficiency notices after it erroneously refunded taxes paid).

Indeed, DEP's right to modify, revoke, and reissue permits for technical mistakes, including errors in calculation and errors made in determining permit conditions, is specifically set forth in its regulations. N.J.A.C. 7:14A-6.4(a),

(b)(14). Furthermore, absent legislative restrictions, administrative agencies have "inherent power to reconsider and redetermine prior decisions in appropriate circumstances." In re Int'l Union Loc. 54, 203 N.J. Super. 297, 340 (App. Div. 1985) (citing In re Trantino, 89 N.J. 347, 364 (1982)). This power is "limited by considerations of fairness and reasonableness." Ibid. (citing Trantino, 89 N.J. at 364).

The RT Authority also argues that DEP did not properly consider the unique nature of the WW Facility. The record establishes that the DEP was well-aware that the WW Facility did not operate every day and operated only in severe weather conditions. Nevertheless, there is nothing arbitrary, capricious, or unreasonable in the DEP treating and assessing the WW Facility as a major facility because it has the capacity to receive wastewater flows of up to 3.85 million gallons per day. In its decision denying the recalculation, DEP represents that its assessment of the WW Facility was consistent with its assessment of "all NJPDES permittees." The RT Authority has submitted nothing to rebut that representation.

C.

The RT Authority next argues that DEP should be estopped from applying the "major" facility fee to the WW Facility because it had previously assessed

the facility as a "minor" facility. Equitable estoppel does not apply in this situation.

"Equitable estoppel may be invoked against a governmental entity only 'to prevent manifest injustice.'" Berg v. Christie, 225 N.J. 245, 280 (2016) (quoting O'Malley v. Dep't of Energy, 109 N.J. 309, 316 (1987)). "The essential elements of equitable estoppel are a knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation would probably induce reliance, and reliance by the party seeking estoppel to his or her detriment." In re Johnson, 215 N.J. 366, 379 (2013) (quoting O'Malley, 109 N.J. at 316-17).

The RT Authority has shown none of the elements of equitable estoppel. Moreover, it has shown no manifest injustice. As already discussed, DEP made a mistake: prior to FY 2019, it assessed the fees on the WW Facility as if it were a minor facility. There is no showing that mistake was an intentional misrepresentation by the DEP. Nor is there a showing that the mistake induced reliance by the RT Authority. The RT Authority always knew that the WW Facility was a major facility. The DEP is not seeking to change the assessment for prior years. Instead, it has properly calculated the FY 2019 assessment and presumably will do so in the future.

11

## D.

Finally, the RT Authority argues that the DEP's assessments of fees prior to FY 2019 were a "de facto" rule and DEP cannot change that rule without appropriate rule-making procedures. The DEP's incorrect assessment of the fee for the WW Facility before FY 2019 was not a rule. Indeed, the fee was inconsistent with the DEP's rules, which had been duly adopted. See N.J.A.C. 7:14A-3.1. The minimum fee for a major facility discharging wastewater was adopted pursuant to appropriate rule-making procedures by the DEP in 2007. See 39 N.J.R. 381(b) (Feb. 5, 2007). The RT Authority's claim that the FY 2019 fee violates principles set forth in Metromedia, Inc. v. Director, Division of Taxation, 97 N.J. 313, 331-32 (1984), lacks sufficient merit to warrant further discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-5201-18T2